BEFORE THE FIRST DIVISION, AUGUST 14, 1957

**No. 61141.**—Northern Cooperage Company *v.* United States, protest 265775–K (Minneapolis).

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoices as "Plain Joint Keg Heading" or "Plain Joint Barrel Heading" and apparently consists of unfinished keg or barrel heads. It was assessed with duty at the rate of 16⅔ per centum ad valorem under the provision for "Manufactures of wood * * * not specially provided for" in paragraph 412 of the Tariff Act of 1930, as modified by the Presidential proclamation carrying out the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373. It is claimed to be properly dutiable at the rate of 2½ per centum ad valorem under the provision in paragraph 406 of the said act, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement, T. D. 52739, reading as follows:

Hubs for wheels, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, heading blocks, and all like blocks or sticks, roughhewn, or rough shaped, sawed or bored.

The designations under which plaintiff claims are apparently those for "heading blocks, and all like blocks * * *, roughhewn, or rough shaped, sawed or bored."

The pieces of wood making up the imported articles were imported in sets, a sample of which is before us as plaintiff's exhibit 1. It consists of three pieces of wood, planed on one side, and sawn on the other. When fitted together, the pieces form a circle of wood approximately 13 inches in diameter, with a double beveled edge.

The method of its production is shown by the record to have been as follows: The original timber or tree is first cut into so-called "bolts," or logs, generally 42 inches in length. These are then sawn into rectangular boards of the required length and thickness, put under a pressure roller (or planer) where they are surfaced on the top side, and then jointed (or planed) on at least one side or edge. The boards are then dried, and a sufficient number of boards, usually from two to five, are put or matched together to form a square from which a circle of the

required diameter can be cut. A machine holds the boards in position and a heading turner cuts the desired circle of wood, and, at the same time, a pair of saws puts the double bevel on the edge of the circle. The pieces are then bundled into sets and imported in that condition.

The record shows that there are two types of cooperage, slack and tight, the former being used for containing dry products and the latter for liquid products. The particular pieces of wood in issue were ordered by the importer for use in tight cooperage. The diameters in which they were ordered were larger than they would have been when ultimately used in tight cooperage, and, after importation, the edges had to be rejointed and glued together, and a new circle of smaller diameter cut on a heading turner and a different bevel cut on the edge of the circle.

There is evidence in the record that the purpose of rounding or cutting the circle abroad was to save the freight which would have been charged had the square pieces been shipped.

It is plaintiff's contention that, in view of this and the foregoing facts, all operations which took place after the squaring of the boards by sawing, i. e., jointing the edges, and cutting and beveling the circle, did not advance the merchandise toward its ultimate use as keg or barrel heads, inasmuch as they had to be done over again after importation and were performed only for reasons of convenience and economy in packing and shipping.

As setting forth the rule of law involved and controlling of the issue, plaintiff cites the case of *C. J. Tower & Sons v. United States*, 36 Cust. Ct. 282, C. D. 1787, wherein it was held that a grinding process applied to cereal offal meal solely to facilitate transportation did not constitute manufacture of the same.

We recognize the principle of law relied upon by the plaintiff, but we do not believe that it is applicable in this case. As has been said, the record shows that there are two kinds of cooperage, slack and tight. The record also shows that the pieces of wood involved in this case were ordered by the importer for use, after importation and after what amounted to remanufacture, in the making of heads for tight cooperage. That was the intent which existed in the mind of the importer, and apparently that intent was carried out. However, the record does not negate the possibility, inherent in the collector's classification, that the imported articles actually constituted heads for slack cooperage and that, in such use, little or no remanufacture, such as described as necessary for tight cooperage, would be required.

In fact, the record indicates that, as imported, the merchandise would be suitable for use in slack cooperage, but that the present importer did not so use it in his business. (R. pp. 36, 40, 41, 46.)

In the brief filed on behalf of plaintiff, our decision in the case of *F. E. Macartney v. United States*, 31 Cust. Ct. 139, C. D. 1560, is cited for the proposition that the provisions of paragraph 406, *supra*, relate to articles in an unfinished or intermediate state but which, nevertheless, exhibit a dedication to the making of a finished article. Plaintiff suggests that the articles at bar may be so described.

We do not agree. Our decision in the *Macartney* case, *supra*, was predicated on a holding of our appellate court in the case of *Washington Handle Co. v. United States*, 34 C. C. P. A. (Customs) 80, C. A. D. 346, to the effect that the blocks, etc., covered by paragraph 406—

\* \* \* are merely the very much unfinished raw materials from which later the finished article is made and that they are shipped in that form to avoid shipping much excessive material not needed in the finished article.

While neither party has attempted to establish what a "heading block" is, it would appear from the foregoing to be a "very much unfinished" (i. e., rough-

shaped) piece of wood in the intermediate stage between raw wood and a heading or head for a keg or barrel. We think there is a distinction between a heading block and an unfinished heading or head, the former connoting the rough-shaped block of wood from which a heading or head will ultimately be finished, and the latter a more advanced or finished state of the article, being close to the state in which it will ultimately be used.

Plaintiff's contention that the planing, jointing, and beveling operations performed abroad did not advance the imported articles in the use for which they were intended, i. e., as headings or heads for tight cooperage, by the particular importer cannot, we think, affect the outcome, since the record does not also show that, in an objective sense, the planing, jointing, and beveling were not finishing processes fitting the imported articles for use as headings or heads for slack cooperage.

On the record presented, the protest must be overruled, and judgment will issue accordingly.