(C. D. 1787)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 25, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Richard M. Kozinn* and *Samuel D. Spector,* trial attorneys), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges; EKWALL, J., concurring

DONLON, Judge: By stipulation, dated October 7, 1955, prior submission of this case was vacated and the case was resubmitted to the third division of this court as it is now constituted.

Plaintiff protests liquidation of merchandise, described in the invoices as ground cereal offal feed, as a nonenumerated manufactured article, dutiable at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52827. It is plaintiff's contention that this merchandise should be classified either under paragraph 730 of the Tariff Act of 1930, as modified by T. D. 51802, dutiable at 2½ per centum ad valorem as byproduct feed obtained in milling cereals or, alternatively, as waste under paragraph 1555, as modified by T. D. 52739, dutiable at 4 per centum ad valorem.

The merchandise was imported from Canada. It was purchased from Kellogg Company of Canada, Ltd., of London, Ontario, Canada, manufacturer of breakfast cereals. The process by which the Kellogg breakfast cereals are produced was described by one of plaintiff's

witnesses, who had over 33 years' experience with Kellogg in its milling operations. From the testimony, it appears that, at various stages in the cereal processing, from the time the raw grains are received until after the cereal has been cooked and dried, "parts break off which become not suitable for cereal for human consumption." (P. 4.) These parts or particles, including pieces of dust and small kernels, which for one reason or another are not suitable "for cereal for human consumption," are discarded and screened out.

This byproduct, as it is derived in this way from the processing of the breakfast cereals, is bulky. Before shipment, it is ground, and the grinding process not only reduces the bulk, but also causes the imperfect particles to commingle so that they are not thereafter individually identifiable. The change is clearly shown by the samples introduced as illustrative exhibits.

There was testimony to the effect that the grinding process was for the sole purpose of more convenient and economical transportation by railroad freight and that, for the purposes of making the animal feed for which it was imported, the unground product would actually have been preferable.

The purchaser of the merchandise was a manufacturer of dog food, who processed the imported merchandise in this country through a mixing operation in which it was combined with other materials. Plaintiff's witness stated that "it is mixed together with a combination of other feeds, plus vitamins, oil and so forth, * * * and it is carried from there into storage bins and dropped from the bins into package lines where it is packaged, put into shipping containers and brought out to the car or truck and shipped to our customers." (P. 15.)

Plaintiff relies on *United States* v. *C. J. Tower & Sons*, 17 C. C. P. A. (Customs) 90, T. D. 43427, and distinguishes *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. (Customs) 34, C. A. D. 168. Plaintiff's argument is that whatever classification is appropriate to the merchandise before grinding, is likewise appropriate thereafter, since the sole purpose of the grinding operation was to facilitate transportation, and the grinding operation did not advance the product or give it a new character, name, or use.

Defendant cites *Mary G. Ricks* v. *United States*, 33 C. C. P. A. (Customs) 1, C. A. D. 308. In the *Ricks* case, the merchandise was derived from barley in the process of making the barley into malt. After separating and removing certain components of barley not wanted in the malt, the components so separated and removed were run through a hammer mill and there beaten to a fine consistency. That was the merchandise that was imported into this country, and it was sold here in that state as barley bran for cattle feed. The collector classified it as a nonenumerated manufactured article. One of the importer's claims was that it was a byproduct feed obtained in

milling wheat or other cereals. Our appeals court agreed with this court that the merchandise, barley bran derived from a malting process, was not, in fact a byproduct feed obtained in the milling of wheat or other cereals. After discussing the definition of the term "milling," as used in paragraph 730, the appeals court held that inasmuch as the merchandise was "a product of a malt-producing process, it is not the product of a cereal-milling process."

The *Ricks* case is decisive of the issue before us. In that case, our appeals court found that the Congress "very specifically limited the controverted provision," that is, the provision for byproduct feed obtained in milling cereals, so as to exclude a byproduct obtained by a process other than milling. Here, the byproduct is of cereals further processed than merely by milling. The record shows that the cereal offal meal is, in part at least, processed further than milling, in that the product includes cooked cereals that are undesirable or unfit for human consumption. On authority of the *Ricks* case, *supra*, the claim for classification under paragraph 730 as byproduct feed obtained in milling wheat or other cereals is overruled.

It remains for us to consider whether the merchandise is a waste, not specially provided for, under the provision of paragraph 1555, or a nonenumerated manufactured article, as the collector classified the merchandise under paragraph 1558.

If the cereal offal meal is, in fact, a waste, it cannot be considered as a nonenumerated article under paragraph 1558, because of the enumeration in paragraph 1555.

Waste was early defined by our appeals court in *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246 (1911), T. D. 31277, as follows (p. 250):

* * * Waste ordinarily implies superfluous, useless, or rejected material, something left over, as the refuse of cotton manufacture. Let it not be understood that we mean to hold that Congress has used the word waste in the tariff act as meaning that which has no value—worthless remnants— but that waste is something which is, generally speaking, left over in the treatment of the material, once obtained, as contradistinguished from the treatment to obtain the material itself. * * *

This definition has been followed. *Mary G. Ricks* v. *United States*, 11 Cust. Ct. 128, C. D. 809 (1943), affirmed in *id.* v. *id.*, 33 C. C. P. A. 1 (1945), C. A. D. 308. In our view, this cereal offal meal is the superfluous, useless, or rejected material left over in the processing and manufacture of cereal breakfast foods and is waste, unless the subsequent grinding process removes it from that classification. In the *Ricks* case, *supra*, the appeals court overruled the plaintiff's claim for classification as a waste and sustained the collector's classification as a nonenumerated manufactured byproduct, on the authority of *United States* v. *Geo. S. Bush & Co. (Inc.) et al.*, 16 Ct. Cust.

Appls. 406, T. D. 43131. The merchandise in the *Ricks* case consisted of certain components of barley, beaten to a fine consistency. The merchandise in the *Bush* case, *supra*, was dogfish cakes, a residue remaining after the extraction of oil from dogfish. This residue, the appeals court held to be dutiable as a waste, while like dogfish cakes, ground to meal form, were held dutiable as a nonenumerated manufactured article, on the theory that the meal was a waste that had been manufactured. In each of these cases, grinding the product had advanced its value toward an intended use.

*United States* v. *F. W. Myers & Co., Inc., supra*, cited by the plaintiff as the probable basis for the collector's action in classifying this merchandise as a nonenumerated manufactured article, may be distinguished on the facts. In the *Myers* case, the merchandise was a mixture, in formula proportions, of oat middlings and oat shorts, which are byproduct feed obtained in the milling of oats, with oat hulls, for which *eo nomine* provision was made in the tariff act. The mixture was then ground. The collector classified the product as *ground oat hulls*. The claim was that it ought to be classified as byproduct feed obtained in milling wheat or other cereals. This court held that the product was not to be classified as a byproduct of milling oats because the grinding process constituted at least one manufacturing step removed from byproduct feed obtained in milling cereals. The appeals court concurred with the result reached by the trial court, but for other reasons, as stated on page 42:

> In view of the fact that the Congress has provided in paragraph 730, *supra*, for "by-product feeds obtained in milling wheat or other cereals" at one rate of duty and for "hulls of oats, * * * ground or unground," at another rate of duty, and as the involved merchandise is *not obtained in the milling of oats*, but, on the contrary, is prepared by mixing a *by-product feed* obtained in milling oats with another tariff entity—oat hulls—in the proportions hereinbefore stated and grinding the mixture, we are of opinion that the involved "Vim Oat Mill Feed" is not a *"by-product"* feed *"obtained in milling"* oats within the purview of paragraph 730, *supra*. [Italics quoted.]

When a grinding process does not advance the value of the merchandise toward an intended use, it is doubtful whether it constitutes manufacture. In *United States* v. *C. J. Tower & Sons*, 17 C. C. P. A. (Customs) 90, T. D. 43427, our appeals court considered the classification of wood shavings that had been reduced, by grinding, to coarse sawdust. In that case, the record disclosed that "the only object of the grinding of the imported material was for convenience and economy in packing and shipping and that no other purpose was accomplished." On such record, the appeals court held the dust a waste, rather than wood flour, partly manufactured.

The record before us is clear in this respect. The grinding process was for convenience and for economy of transportation. Grinding did not advance the product towards its ultimate use as a component of

dog food. On the contrary, the product would have been preferred for that use in its unground state. Grinding attained for the product no distinctive name, character, or use different from what it had in its prior, or unground, state. Therefore, it is not a manufactured article.

When the competition is between an enumerated classification and one that is nonenumerated, the enumerated classification will ordinarily prevail, unless the evidence takes the merchandise out of the enumeration. Plaintiff has sustained its burden of proof, and the defendant has not rebutted those proofs. The claim for classification of the cereal offal meal under these protests as waste, under the enumeration of paragraph 1555, as modified, *supra*, at 4 per centum ad valorem is sustained. Judgment will be rendered accordingly.

### CONCURRING OPINION

EKWALL, Judge: I agree that the merchandise is excluded from the provisions of paragraph 730 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, under authority of the *Ricks* case, cited in the majority opinion. I further agree that said merchandise is properly dutiable as waste under paragraph 1555 of the same law, as modified, under the holding in the *Tower* case and cases cited in that decision.