(C. D. 1992)

A. N. Deringer, Inc.⎫
Roy Goff & Co.  ⎬ v. United States
⎭

United States Customs Court, Third Division

(Decided May 9, 1958)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh* and *Sheila N. Schwartz*, trial attorneys), for the defendant.

Before Johnson, Donlon, and Richardson, Judges

Donlon, Judge: The merchandise is ground horse meat, packed in cans and labeled as dog and cat food, imported from Canada. While the official papers were not placed in evidence, it appears, from the record as developed, that there were included in the same entry some other canned meats, described also as dog and cat food. The protest raises no issue as to any of this merchandise, save only the canned horse meat. That is the only merchandise that is covered by the protest.

The merchandise was entered at Champlain, N. Y. The collector there classified the merchandise under paragraph 1558 of the Tariff Act of 1930, as modified, as "articles manufactured, in whole or in part, not specially provided for," and charged duty at the modified rate of 10 per centum appropriate to that classification. The plaintiffs claim that classification should be, also under paragraph 1558, as "raw or unmanufactured articles not enumerated or provided for," dutiable at the modified rate of 5 per centum.

There is no contention that the merchandise is enumerated or otherwise specially provided for in the Tariff Act of 1930, or in any modi-

fication of it. The controversy is whether this merchandise is, for tariff purposes, an unmanufactured article, or whether it is an article that has been manufactured, in whole or in part.

All evidence of record was introduced by plaintiffs. A sample of the merchandise, a can, was received in evidence, with the representation that it is similar in all respects to the instant merchandise. The exhibit can has not been opened. To do so would undoubtedly bring about deterioration of the contents. The evidential value of this exhibit, therefore, rests more in the appearance of the can and in its label, than in any light it throws on the horse meat contents, as such.

Plaintiffs also offered in evidence two affidavits, to admission of which defendant said it had no objection, and they were received. Both affidavits were executed in Canada. One is the affidavit of Mr. Rolland Rheault, described as manager of Jean Demers, Inc., in Gentilly, Province of Quebec. Demers operate a slaughterhouse and cannery, and they were the processors and sellers of the instant merchandise. Mr. Rheault was produced at the trial and testified. Under the circumstances, it is doubtful whether any great weight should attach to facts stated in his affidavit that were not brought out in his testimony on the witness stand. This is not an appeal to reappraisement. No statute or rule gives evidential value to such an affidavit as this in a classification litigation.

The other affidavit is sworn to by Mr. Frederick Karl Charles Snyder, described as president of Snyder & Sons, Ltd., Ste-Genevieve de Pierrefonds, Province of Quebec. The Snyder concern had nothing to do with the merchandise now before us, but counsel for plaintiffs asserted on the trial, in response to a question of defendant's counsel, that the merchandise involved in this protest "is processed in the identical manner as described" in the Rheault and Snyder affidavits. Defendant's counsel replied "That's satisfactory." It would appear that this is tantamount to a stipulation that the processing of this horse meat was "identical" with the processing that is described in the Rheault and Snyder affidavits.

Witness Rheault testified that his affidavit, introduced in evidence, was the same statement he had given to Mr. J. C. Fawcett, a Treasury agent.

Processing is described by successive stages, from the killing of the horse "with a 22 caliber gun," to the bleeding, skinning, deboweling, and cutting up of the dead horse; boning the horse meat; putting it through a grinder "to facilitate packing"; heating it in "mixers" at a temperature of 100 to 185 degrees, in order to eliminate air and create a vacuum; putting the product into a "capping machine"; washing the cans and putting them into baskets of about 500 cans each; placing the baskets in retorts, where the cans (with contents) are

cooked under 15 pounds' pressure for 90 minutes at a temperature of about 240 degrees. The final steps are placing the cans in a vat of cool water, where they are kept for about 20 to 25 minutes, after which the cans are labeled, packed in cartons of 48 cans each, and stowed away for shipping.

The witness was explicit in his assertion that nothing was added to the horse meat. The finished product is cooked horse meat, he said. He characterized this cooked horse meat as different from the meat taken from the horse only in form. Obviously, this testimony as to form is opinion testimony of the witness. It is to be weighed by the court, together with all other evidence of record bearing on the nature of the processing, and the changes which the processing effected, for tariff purposes.

On cross-examination, witness Rheault explained that the steaming process created a vacuum and that the subsequent cooking process eliminated bacteria.

The facts recited in the Snyder affidavit show essentially the same processing operations as described by witness Rheault, except that Mr. Snyder states that water was added to the horse meat. As we shall indicate later, this variance in processing methods seems to us not material to our decision.

The label on the exhibit can describes the product in large bold type as "100% pure, all horse meat, for dog food." In smaller type, the label states:

CATS LOVE IT TOO

Goff All Horse Meat is 100% HORSE MEAT cooked in the can in its own natural juices to retain all its original fresh Meat flavor and nourishment.

Contains no cereals, no Meat by-products, no artificial flavoring and no Meat substitutes.

15 Oz. NET WEIGHT

GUARANTEED ANALYSIS:

| | |
|---|---|
| Min. Protein | 15% |
| Min. Fat | 3% |
| Max. Fibre | 1% |

INGREDIENTS: HORSE MEAT

The label further states that this product is:

READY TO SERVE

Goff's 100% Horse Meat is recommended by veterinarians to fill the meat ration requirements of all breeds of dogs and cats.

For economy—Mix in equal parts with any of the following fillers:

Goff Kibbled Dog Biscuit<br>
Stale Bread<br>
Breakfast Cereal<br>
Meal type dry dog food<br>
Table Scraps

Then add warm water to soften dry food. The Meat in this can makes 2 or 3 feedings in many cases.

Your Veterinarian can best advise as to quantity and mixing proportions since individual pets' requirements vary according to size, activity, etc.

Plaintiffs' argument is based, in part, at least, on the asserted view that although the horse meat has been changed in form by grinding, and also has been cooked and packed in airtight containers and labeled for use as dog and cat food, inasmuch as no other ingredient has been added to the horse meat, the product is to be classified as an unmanufactured article, rather than as an article, manufactured, in whole or in part. The cases which plaintiffs cite in support of this contention are, however, not cases in which, as here, conflict is between the manufactured and unmanufactured provisions of paragraph 1558. The cases which plaintiffs cite, as authority for their contention, are cases in which classification conflicts were between *eo nomine* and group classifications, often when the latter included a "not specially provided for" provision.

This court and our appeals court have accepted it as a guiding principle of classification, that *mere change in the form of an article* shall not be availed of to set aside an *eo nomine* or other enumerated provision by which Congress expressed its intention as to tariff classification.

There are cases which have judicially construed change in form, as to whether or not such change of form constitutes a manufacture within the meaning of paragraph 1558. Some of such cases, and the rational of the decisions, are discussed in *C. J. Tower & Sons* v. *United States*, 36 Cust. Ct. 282, C. D. 1787.

In the *Tower* case, we found that cereal offal meal had been ground, that this was done solely to facilitate transportation, and that the grinding did not advance the product toward its ultimate use *in the manufacture of dog food*. There was, indeed, testimony to the effect that the unground product would have been preferable for such intended use.

If ground horse meat, without any further processing, had been imported, the issue would be raised as to whether, under the rule in the *Tower* case, the purpose of grinding was solely for transportation of the horse meat or whether the grinding was a step *in the manufacture of dog food*. These facts and that issue are not before us. It may be noted, however, that grinding of the horse meat, as described in the evidence here of record, seems not to be either unnecessary or undesirable in the manufacture of the horse meat into dog food.

Here, of course, the entire processing took place before importation. Processing consisted not merely of grinding, but also of cooking and packaging, both for preservation and to put the product in condition for sale for its intended use as dog food. That, in our opinion, constitutes manufacture.

Discussing the cases of *Mary G. Ricks* v. *United States*, 11 Cust. Ct. 128, C. D. 809, affirmed 33 C. C. P. A. 1, C. A. D. 308, and *United States* v. *Geo. S. Bush & Co. (Inc.) et al.*, 16 Ct. Cust. Appls. 406, we said, in the *Tower* case, *supra*, at page 285:

\* \* \* The merchandise in the *Ricks* case consisted of certain components of barley, beaten to a fine consistency. The merchandise in the *Bush* case, *supra*, was dogfish cakes, a residue remaining after the extraction of oil from dogfish. This residue, the appeals court held to be dutiable as a waste, while like dogfish cakes, ground to meal form, were held dutiable as a nonenumerated manufactured article, on the theory that the meal was a waste that had been manufactured. In each of these cases, grinding the product had advanced its value toward an intended use.

It cannot be doubted that the processing of horse meat into canned dog food, as described in considerable detail in the record before us, gave the product a distinctive name, character, or use different from what the horse meat had in its prior, or unground and unprocessed, state. Therefore, this dog food is a manufactured article, within the meaning of paragraph 1558.

The test as to whether or not an article has been manufactured is not whether the article includes only one ingredient, or includes more than one ingredient, as plaintiffs seem to argue. There is some evidence that water was added; some evidence that it was not. This we deem to be immaterial.

We find no suggestion, either in the statute or in the decided cases, that a mixture of ingredients is the *sine qua non* of manufacture. When raw material is "removed from its crude or primary state, though it remains a variety of the original material," and is worked into form suitable for use, it is manufactured. *United States* v. *C. J. Tower & Sons*, 44 C. C. P. A. (Customs) 1, C. A. D. 626. If the process completes the product for its intended use, it is wholly manufactured. If the process advances the product toward the intended use, but does not result in the final form for the intended use, it is manufactured, but only in part. *Chas. H. Demarest, Inc.* v. *United States*, 44 C. C. P. A. (Customs) 133, C. A. D. 650. In either case, it is (if an unenumerated article) dutiable under paragraph 1558 as an article, manufactured in whole or in part, rather than as a raw or unmanufactured article.

Plaintiffs cite certain exceptions to the general principle above stated. One of these exceptions we have already mentioned. A process that is designed solely to prepare an article for transportation, but not for use, does not constitute manufacture, even in part. *C. J. Tower & Sons* v. *United States*, 36 Cust. Ct. 282, C. D. 1787. So, too, a process necessary in order that an article in its native state may be suitable for commerce, may not be a process of manufacture. *Quong Lee & Co.* v. *United States*, 20 C. C. P. A. (Customs) 192.

Even though the process intended to put the raw article in form suitable for commerce may also, but incidentally, advance the article for its intended use, the process does not constitute manufacture. *Lackawanna Steel Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 93.

The process described here, read as an entirety, is not within these exceptions, or any of them. As we have stated above, the process described in the record before us transformed the raw whole horse meat into a new article of commerce.

We hold that this horse meat, processed and packed in cans, labeled dog and cat food and sold for that use, is a manufactured article. The protest is overruled.

Judgment will be entered accordingly.