**AZTECA MILLING CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 83–08–01137.**

United States Court of International Trade.

Dec. 20, 1988.

Sheldon & Mak, Steve B. Lehat, Pasadena, Cal., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Michael P. Maxwell, New York City, at trial and Al J. Daniels, Jr. on the brief), for defendant.

MEMORANDUM OPINION
AND ORDER

RE, Chief Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of ten entries of certain prepared corn flour products imported from Mexico. The Customs Service classi-

fied the merchandise as "[c]ereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling," under item 182.30 of the Tariff Schedules of the United States (TSUS), as modified by T.D. 68/9, and assessed duty at 2.5 percent *ad valorem.*

Plaintiff protests the classification and claims that the merchandise was entitled to entry free of duty under item A182.30, TSUS, as modified, pursuant to General Headnote 3(c)(ii), TSUS, under the Generalized System of Preferences (GSP).

The pertinent tariff provisions provide as follows:

*Classified under:*

Schedule 1, Part 15, Subpart B:

182.30 Cereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling ... 2.5% *ad val.*

*Claimed under:*

* A182.30 Cereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling..... [Free]

Under the GSP provision, a designated product may enter the United States duty-free from a beneficiary developing country (BDC):

[i]f the sum of (A) the cost or value of the materials produced in the beneficiary developing country ... plus (B) the direct costs of processing operations performed in such beneficiary developing country ... is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

19 U.S.C. § 2463(b)(2); *see* General Headnote 3(c)(ii), TSUS (1982). Pursuant to the authority conferred upon the Secretary of the Treasury to "prescribe such regulations as may be necessary to carry out this subsection," 19 U.S.C. § 2463(b)(2), the Customs Service promulgated 19 C.F.R. § 10.177(a) which provides in part:

(a) *"Produced in the beneficiary developing country" defined.* For purposes of §§ 10.171 through 10.178, the words "produced in the beneficiary developing country" refer to the constituent materials of which the eligible article is composed which are either:

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

*Id.* Accordingly, to be entitled to duty free treatment, plaintiff must establish that the value of the corn grown in the United States, used to make the prepared corn flour products, may properly be included as part of "the cost or value of the materials produced" in Mexico, which, added to the costs of processing, must equal 35 percent of the appraised value of the imported merchandise. In order to establish this, pursuant to 19 C.F.R. § 10.177(a), plaintiff must show that the corn was "[s]ubstantially transformed ... into a new and different article of commerce," while in Mexico.

Both parties have stipulated that if the value of the United States-grown corn is counted toward the 35 percent value-added requirement, the imported corn flour would be entitled to duty-free entry under the GSP. Hence, the question presented is whether the United States-grown corn is "substantially transformed ... into a new and different article of commerce" in Mexico prior to being used to make the imported prepared corn flour products.

After an examination of the merchandise, relevant case law, and the testimony of record, it is the determination of the court that the plaintiff has not overcome the presumption of correctness that attaches to the government's classification. *See* 28 U.S.C. § 2639(a)(1) (1982). Plaintiff has not shown that the imported merchan-

---

* Articles for which the designation "A" appear in the column entitled "GSP" of the schedules are those designated by the President to be eligible articles for purposes of the GSP pursuant to Section 503 of the Trade Act of 1974. The designation "A" signifies that all beneficiary developing countries are eligible for preferential treatment with respect to all articles provided for in the designated TSUS item. *See* General Headnote 3(c)(ii), TSUS.

dise is entitled to entry free of duty under item A182.30, TSUS, in accordance with the GSP. Accordingly, the court holds that the merchandise was correctly classified under item 182.30, TSUS.

The imported corn flour products, which are used for making corn chips, taco shells, tortillas, and tamales are produced by plaintiff in Mexico under a patented process from corn grown in the United States. The corn is removed from the cob, cleaned, weighed, and then cooked in vats with lime for 40 minutes to one hour. The cooked corn, which traditionally is called nixtamal, is then steeped for approximately one hour. Afterward, it is washed to eliminate excess lime and loose hulls. The resulting corn product, traditionally called masa, is ground in a hammer mill, and then flash dried in approximately 15 seconds. The dried product is cooled and then sifted into flour. This dry prepared corn flour is imported into the United States, and, subsequently, is mixed with water to produce masa which is used to make a variety of products.

The traditional process for producing nixtamal and masa, which was originated by the Aztec Indians, differs in certain ways from plaintiff's patented process for producing prepared corn flour. For example, under the traditional method the steeping period is much longer, taking at least 8 hours, often longer, and the nixtamal is stone ground rather than hammer milled. Under the traditional process the nixtamal has a moisture content of approximately 50 percent while under plaintiff's patented process the content is approximately 35 percent. Nixtamal and masa are highly perishable products which spoil in 24 hours when preservatives are not added.

It is uncontroverted that the corn used in processing the prepared corn flour products was grown in the United States and cannot be considered "[w]holly the growth, product or manufacture of the beneficiary developing country." Therefore, to prevail, plaintiff must prove that the United States-grown corn was "[s]ubstantially transformed in the beneficiary developing country into a new and different article of commerce," and that this "new and different article of commerce" was in turn substantially transformed into the imported corn flour products.

As this court held in *The Torrington Co. v. United States*, 8 CIT 150, 596 F.Supp. 1083 (1984), *aff'd*, 764 F.2d 1563 (Fed.Cir. 1985):

> It is not enough to transform substantially the non-BDC constituent materials into the final article, as the material utilized to produce the final article would remain non-BDC material. There must first be a substantial transformation of the non-BDC material into a new and different article of commerce which becomes "materials produced," and these materials produced in the BDC must then be substantially transformed into a new and different article of commerce.

8 CIT at 153, 596 F.Supp. at 1086; *see Torrington*, 764 F.2d at 1567–68. Hence, to meet the 35 percent value-added requirement, there must be at least two substantial transformations of the original non-BDC material. In determining whether the United States-grown corn fulfills the requirement of substantial transformation, it is essential that the court not only determine whether the requisite substantial transformations have taken place, but also whether the intermediate articles were "articles of commerce." *See Torrington*, 764 F.2d at 1568–70.

Plaintiff contends that, in its patented process of making prepared corn flour products from United States-grown corn, the corn is substantially transformed into three distinct intermediate products, thus qualifying the imported merchandise for duty-free entry. According to plaintiff the intermediate products produced from the corn, which are "nixtamal," "tamale masa," and "tamale flour," are distinct articles of commerce.

In support of its claim, plaintiff called two witnesses, Mr. Jose DeLeon and Mr. Ezequiel de Jesus Montemayor, and presented numerous exhibits. Mr. DeLeon is a regional sales manager for plaintiff, serving the western section of the United States and Canada. Mr. Montemayor is

technical subdirector for Gruma Corporation, located in Monterrey, Mexico, which is the parent company of plaintiff. During the time in question, he was directly involved in the development and production of the imported corn flour products.

The first intermediate product which plaintiff contends is produced is "nixtamal." Mr. Montemayor testified that the term "nixtamal" has various meanings depending on the context but generally it is corn "[w]hich has been cooked, or cooked and washed, or cooked and steeped and washed." He stated that nixtamal produced under plaintiff's process comes into existence after the corn is cooked in lime and water, at which point the nixtamal possesses a water content of 35 to 40 percent. He explained that this nixtamal is not consumed or "eatable," stating "it can be eaten but it is not an appetized [sic] product.... it will not appeal with the consumer. The product ... that has appeal to the consumer, will have a higher moisture content." Mr. Montemayor stated that the nixtamal produced by traditional methods, which is sold to consumers in supermarkets, has a higher moisture content than the nixtamal produced by plaintiff's patented process.

Mr. DeLeon testified that a product called nixtamal or hominy is bought and sold in various parts of the United States. He indicated that it is either cooked and consumed, for example, in soups, or ground into masa by its purchasers. He testified that it is highly perishable, lasting no more than 24 hours before spoiling.

Both Mr. DeLeon and Mr. Montemayor testified that the plaintiff does not buy or sell the nixtamal produced by its patented process or the type produced through traditional methods. Mr. DeLeon added that none of plaintiff's direct competitors sell nixtamal for use by consumers.

The second intermediate product which plaintiff contends is produced is "masa." Mr. DeLeon testified that the product called masa, which is bought and sold in various parts of the United States, is prepared by grinding nixtamal into a coarse masa for making tamales and a finer masa

for tortillas. He stated that the masa is produced by tortilla factories and is purchased by distributors, supermarkets and the public. Mr. Montemayor added that the masa is also highly perishable.

Plaintiff's witnesses stated that plaintiff does not produce or sell the traditional form of masa, nor does it sell the masa produced under its patented process. Mr. Montemayor testified that there is no point in plaintiff's continuous production process at which the wet ground corn (masa) is accumulated. He explained that there would not be an accumulation of wet masa unless something went wrong in the manufacturing process, since, under normal circumstances, the wet stream of corn particles is instantly turned into flour or dehydrated.

The third intermediate product which plaintiff contends is produced is "tamale flour." It maintains that tamale flour is transformed into the imported corn flour products, namely tortilla and taco shell flour through sifting.

The government contends that the evidence does not show that the corn was substantially transformed into new and different articles of commerce. According to the government, "the American corn was made into 'instant masa' in a continuous patented manufacturing process in which there was never a point at which new products, for which there is a commercial market, were created." It emphasizes that plaintiff's patented process for preparing "instant masa" is described in the patent as "a continuous, rather than a batch process."

The government did not merely rely upon the statutory presumption of correctness. In support of its contentions it submitted the testimony of an expert witness, Dr. Jon M. Faubion, an associate professor in the Department of Grain Science and Industry at Kansas State University. With regard to the product nixtamal, Dr. Faubion testified that the nixtamal made in the traditional process has a moisture content in the range of 50 to 54 percent which is considerably higher than the moisture content of the nixtamal stage of plaintiff's patented

process. He explained that plaintiff's process employs a lower moisture content to insure more efficient drying in the flour stage. According to Dr. Faubion, plaintiff's nixtamal is not comparable to the traditional masa which is sold over the counter to consumers, and, therefore, it is not an article of commerce, but rather it is "material in process."

A substantial transformation has been defined as "occur[ring] when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *See Torrington,* 764 F.2d at 1568 (citing *Texas Instruments v. United States,* 681 F.2d 778, 782 (CCPA 1982)). In the present case, plaintiff states that its process produces four separate items from corn: nixtamal, masa, tamale flour and the prepared corn flour products. The evidence presented by both parties establishes that nixtamal and masa prepared under the traditional method of processing corn are sold to consumers as items commercially distinct from corn. Plaintiff maintains that, similarly, the items resulting at certain steps in its process are commercially distinct from corn and prepared corn flour. In support of this contention plaintiff cites *Torrington,* and states that "the facts in the instant action are virtually on all fours with those in *Torrington....*"

The question presented in *Torrington* was whether certain imported industrial sewing machine needles manufactured in Portugal from non-BDC wire were eligible for entry free of duty pursuant to the GSP. *See* 8 CIT 150, 596 F.Supp. 1083. The trial court held that the sewing machine needles were entitled to duty-free entry because a dual substantial transformation occurred in the BDC by the production from the wire of an intermediate article called a swage needle blank which was a distinct "article of commerce." *Id.* at 154–55, 596 F.Supp. at 1086–87. The holding was based upon the finding that the swage blanks had a name, character, and use distinct from the wire. *Id.* Furthermore, the swages were found to be "articles of commerce" because, on two documented occasions, they had been the object of large transactions. *Id.*

In affirming, the Court of Appeals for the Federal Circuit stated that the wire was a raw material possessing "nothing in its character which indicates either the swages or the final product." *Torrington,* 764 F.2d at 1568. The court stated that the swages were a "new and different article" having a "definite size and shape which renders them suitable for further manufacturing into needles with various capabilities." *Id.* As stated by the appellate court, at the intermediate phase of the production process "the material which emerges is more refined, possesses attributes more specifically applicable to a given use, and has lost the identifying characteristics of its constituent material." *Id.* at 1568–69.

Under plaintiff's process the products produced at the intermediate steps in the preparation of the corn flour products differ in certain ways from the constituent raw material of corn. The nixtamal produced "possesses attributes more specifically applicable" to its use in food preparations and is suitable for further processing into prepared corn flour. Similarly, masa is more refined than nixtamal and "possesses attributes more specifically applicable" to its given use and for processing into prepared corn flour. The tamale flour, which is a dehydrated masa, differs from the masa in that it is more refined and is specifically suitable for use in tamales. However, it is not distinct from the final imported product, as it requires only sifting to a uniform size for completion. The products resulting at certain steps in plaintiff's patented process may be more refined than the constituent material of corn, but, nevertheless, are clearly recognizable as processed corn. Hence, in contrast to the facts and merchandise of *Torrington,* each product has not "lost the identifying characteristics of its constituent material." *See* 764 F.2d at 1569.

Beyond the court's findings as to whether a change has occurred in the name, character, or use of the constituent material, to be entitled to duty-free entry the

merchandise must be substantially *transformed into a new and different article of commerce.* The evidence does not support a finding of dual transformation, because the items which result from certain steps in plaintiff's process are not distinct "articles of commerce." Plaintiff has not shown any commercial transactions or a market for the nixtamal and masa it claims are intermediate products. It is evident from the record that the nixtamal and masa produced during plaintiff's patented process have a lower moisture content than the traditionally prepared products purchased by consumers. Furthermore, plaintiff's process for making the prepared corn flour is a continuous one in which no intermediate products are collected and available for sale.

In defining the "of commerce" requirement, the court in *Torrington,* stated:

> By emphasizing that the article must be "of commerce," the Customs regulation imposes the requirement that the "new and different" product be commercially recognizable as a different article, *i.e.,* that the "new and different" article *be readily susceptible of trade, and be an item that persons might well wish to buy and acquire for their own purposes of consumption or production.*

764 F.2d at 1570 (emphasis added).

In support of this statement the court in *Torrington* cited T.D. 77–273, 11 Cust. B. & Dec. 551 (1977), in which the Treasury Department concluded that dichloro, a product resulting from an intermediate step in the production of technical atrazine, did not satisfy the dual substantial transformation requirement. According to the Treasury Department, even though the dichloro differed chemically both from the constituent articles from which it was made and the final article, it was not an article of commerce. The Treasury Department reasoned that the process used to manufacture the technical atrazine was a continuous one, and thus, the dichloro was not generally bought and sold. The dichloro that resulted from the first step of the manufacturing process would have to be refined in order to make shipping practicable. *See*

*Torrington,* 764 F.2d at 1570 (citing T.D. 77–273, 11 Cust. B. & Dec. at 553–54).

The case at bar is analogous to the dichloro case since the evidence shows that the nixtamal, masa, and tamale flour produced in plaintiff's process are not articles of commerce. As the court stated in *Torrington,* in order for an article to be "of commerce" it must be "commercially recognizable as a different article, *i.e.,* [it must] be readily susceptible of trade, and be an item that persons might well wish to buy and acquire for their own purposes of consumption or production." 764 F.2d at 1570.

Plaintiff asserts that the intermediate products produced during the processing of the prepared corn flour are articles of commerce, since, although plaintiff does not sell them, both nixtamal and prepared masa are sold commercially by others.

The nixtamal and the masa which are formed during plaintiff's patented process, however, are not the same since they have a lower moisture content than the products which are sold commercially by others. The lower moisture content, which is necessary for efficient processing of the prepared corn flour products, render them unsuitable for their intended use by consumers. The imported corn flour products are prepared in an essentially continuous process, so that the products resulting from the various procedures are not articles of commerce but rather materials in process, advancing toward the finished product. Hence, the products are not marketable or "readily susceptible of trade."

Plaintiff's witness, Mr. Montemayor, testified that because of its lower moisture content the nixtamal would not be appealing to the purchaser for consumption. He also testified that the prepared masa is "immediately drie[d] in approximately fifteen seconds" thus "never gather[ing] in any aggregate." Due to the continuous nature of the process at this stage it cannot be said that the nixtamal or masa were "readily susceptible of trade."

■ On the evidence before the court, plaintiff has failed to prove that its nixtamal and prepared masa are "items that persons might well wish to buy and acquire

for their own purposes of consumption or production." *See Torrington,* 764 F.2d at 1570. The conclusion of the court is further supported by the fact that neither plaintiff nor its competitors has ever sold the nixtamal or the masa that comes into existence in the course of producing their prepared corn flour. According to *Torrington,* an article of commerce is "one that is ready to be put into a stream of commerce...." *See id.* Although an article "need not have actually been bought-and-sold, or actually traded, in the past" the lack of purchases and sales is nevertheless a factor to be considered in determining whether a product or merchandise is an article of commerce. *See id.* In this case, it is fair to conclude that plaintiff's nixtamal and masa could not be sold because the merchandise is not considered suitable for purposes of consumption by purchasers.

Finally, plaintiff contends that the continuous nature of the production process should not bar eligibility for duty-free entry under the GSP. According to plaintiff the contention that "batch as opposed to continuous production permits analysis of discreet intermediate products calls for form over substance." In spite of the competent and skillful presentation of the case by plaintiff, the evidence does not support a finding that the products formed at the nixtamal stage or masa stage of production are "new and different articles of commerce," regardless of whether the process is "batch" or "continuous" in nature. The nature of the process and its emphasis on the end product produced give additional support to defendant's argument that, in producing prepared corn flour products under plaintiff's method, "there was never a point at which new products, for which there is a commercial market, were created."

The court holds that plaintiff has failed to establish that corn grown in the United States was "[s]ubstantially transformed in the beneficiary developing country into a new and different article of commerce." Hence, the imported merchandise was properly classified under item 182.30, TSUS, and is not entitled to duty-free entry under the GSP. Judgment will issue accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED: that the action is dismissed.