AZTECA MILLING CO.,
Plaintiff–Appellant,

v.

The UNITED STATES,
Defendant–Appellee.

No. 89–1320.

United States Court of Appeals,
Federal Circuit.

Nov. 29, 1989.

Rehearing Denied Dec. 26, 1989.

Steven B. Lehat, Sheldon & Mak, Pasadena, Cal., argued for plaintiff-appellant.

Al J. Daniel, Jr., Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With him on brief, were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before MARKEY, Chief Judge, NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Azteca Milling Co. appeals from the order of the United States Court of International Trade, *Azteca Milling Co. v. United States*, 703 F.Supp. 949 (Ct. Int'l Trade 1988), dismissing Azteca's challenge to the United States Customs Service's (Customs Service) classification under item no. 182.30 of the Tariff Schedules of the United States (TSUS) of 10 entries of certain corn products imported from Mexico. We affirm.

Background

The facts underlying this appeal are more completely set forth in the opinion of the trial court, *id.* at 951, and a familiarity with that opinion is presumed. Azteca is a producer and importer of corn flour products used for making corn chips, taco shells, tortillas and tamales. The imported flour products are produced in Mexico by a patented process from corn grown in the United States.

The Customs Service classified Azteca's 10 entries under TSUS item no. 182.30 which imposes a 2.5% *ad valorem* duty.[1] Azteca protested this classification, claiming that the products should instead be entitled to duty-free status under TSUS item no. A182.30,[2] as modified, pursuant to

---

1. TSUS item no. 182.30 reads:
   Schedule 1, Part 15, Subpart B:
   182.30 Cereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling .. 2.5% *ad val.*

2. TSUS item no. A182.30 reads:
   A182.30 Cereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling.....
   [Free]

General Headnote 3(c)(iii), TSUS, under the Generalized System of Preferences (GSP).

Under the GSP, products imported from a beneficiary developing country (BDC), such as Mexico, may be entered into the United States duty-free:

> [i]f the sum of (A) the cost or value of the materials produced in the beneficiary developing country ... plus (B) the direct costs of processing operations performed in such beneficiary developing country ... is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

19 U.S.C. § 2463(b)(2); *see* General Headnote 3(c)(iii), TSUS. The phrase "produced in the beneficiary developing country" in part (A) of section 2463(b)(2) is defined by including materials which are consumed in making the imported product, and which materials are either:

> (1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

> (2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

19 C.F.R. § 10.177(a) (1989); *see Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 630 (Fed.Cir.1989). It is undisputed by the parties that Azteca's imported products are not composed of products that wholly fall within category (1) listed above. Consequently, the parties have stipulated that "if the value of the United States-grown corn is counted toward the 35 percent value-added requirement, the imported corn flour would be entitled to duty-free entry under the GSP." *Azteca*, 703 F.Supp. at 950.

## OPINION

In order for a raw material not produced in the BDC to be included in the value-added requirement of 19 U.S.C. § 2463(b)(2), "[t]here must first be a substantial transformation of the non-BDC material into a new and different article of commerce which becomes 'materials produced,' and these materials produced in the BDC must then be substantially transformed into a new and different article of commerce." *Torrington Co. v. United States*, 596 F.Supp. 1083, 1086 (Ct. Int'l Trade 1984), *aff'd*, 764 F.2d 1563, 1567–68 (Fed.Cir. 1985). In *Torrington*, the court went on to say:

> By emphasizing that the article must be "of commerce," the Customs regulation imposes the requirement that the "new and different" product be commercially recognizable as a different article, *i.e.*, that the "new and different" article be readily susceptible of trade, and be an item that persons might well wish to buy and acquire for their own purposes of consumption or production.

*Id.* at 1570. The court further stated that "an 'article of commerce' ... is one that is ready to be put into a stream of commerce, but need not have actually been bought-and-sold, or actually traded, in the past." *Id.*

Whether Azteca's patented process involves a substantial transformation of United States corn into a new and different article of commerce in Mexico involves findings of fact by the trial court. "These findings may not be set aside unless clearly erroneous." *Superior Wire v. United States*, 867 F.2d 1409, 1414 (Fed.Cir.1989). If the trial court's findings are "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

In this case, the trial court determined that the three intermediate products—nixtamal, tamale masa, and tamale flour—which Azteca claimed were produced in its patented continuous process to produce the imported "instant masa" (dry corn flour) are not "articles of commerce." *Azteca*, 703 F.Supp. at 954. It found that the claimed products in the process "may be more refined than the constituent material of corn, but, nevertheless are clearly recognized as corn.... each product has 'not lost the identifying characteristic of its constituent material.'" *Azteca*, 703 F.Supp. at 953 (quoting *Torrington*, 764 F.2d at 1569). The court also relied on the fact that the

intermediate products in Azteca's process have a "lower moisture content" than traditionally prepared products for consumers. It noted that Azteca's own witness testified that the nixtamal produced by Azteca's process "would not be appealing to the purchaser for consumption" because of its lower moisture content. *Azteca*, 703 F.Supp. at 954.

In addition, the court found that Azteca had not shown "any commercial transactions or a market for the nixtamal and masa it claims are intermediate products." *Id.* at 954. The court correctly observed that "[a]lthough an article 'need not have actually been bought-and-sold, or actually traded in the past' the lack of purchases and sales is nevertheless a factor to be considered in determining whether a product or merchandise is an article of commerce." *Id.* at 955 (quoting *Torrington*, 764 F.2d at 1570 (Fed.Cir.1985)).

After reviewing the record as a whole, we are convinced that the court's finding that Azteca's claimed intermediate products are not articles of commerce is not clearly erroneous. *See Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511–12. Since these products do not qualify as "materials produced in the beneficiary developing country" as defined by 19 C.F.R. § 10.177(a), the value of the constituent corn consumed in the manufacture of the imported products does not count toward the thirty-five percent value-added requirement of 19 U.S.C. § 2463(b)(2). Accordingly, the judgment of the Court of International Trade is

AFFIRMED.