**TROPICANA PRODUCTS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 87–10–00984.

United States Court of, International Trade.

March 16, 1992.

Baker & McKenzie, William D. Outman, II, Thomas Peele and Teresa A. Otruba, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, New York City, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, and Steven Berke, U.S. Customs Service, of counsel, for defendant.

Barnes, Richardson & Colburn, Matthew T. McGrath and Peter A. Martin, Washington, D.C., for amicus curiae Florida Citrus Mutual.

## AMENDED OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWMAN, Senior District Judge:

### INTRODUCTION

Presented for determination is the dutiable status of frozen concentrated orange juice for manufacturing ("manufacturing concentrate") imported from Brazil in 1981 by Tropicana Products, Inc. ("Tropicana") and processed in its "Class 8" Customs bonded warehouse.

Tropicana, an importer and domestic producer of orange juice and other citrus prod-

ucts, brings this action pursuant to 19 U.S.C. § 1581(a) to challenge the classification by Customs of five importations of manufacturing concentrate. The merchandise was entered at the port of Tampa, Florida in 1981, and after processing in and withdrawal from Tropicana's bonded warehouse was assessed with duties at the rate of 35 cents per gallon as "concentrated" fruit juices under item 165.35 of the Tariff Schedules of the United States ("TSUS").

The importer insists that in compliance with 19 U.S.C. § 1562 Customs should have classified the imports as "not concentrated" (their condition as withdrawn from bonded warehouse), dutiable under item 165.30 at the lower rate of 20 cents per gallon.

Under 19 U.S.C. § 1562 and implementing regulations (19 C.F.R. § 19.1 *et seq.* (1981)), with Customs' permission, imported goods may be entered in a bonded warehouse and "cleaned, sorted, repacked, or *otherwise changed in condition, but not manufactured*" (emphasis added). If the statute has been complied with, Customs must classify the imports in conformity with their condition as withdrawn from the warehouse rather than in their condition as they arrived in the United States.

On August 7, 1981 the Customs Service promulgated a ruling that Tropicana's bonded warehouse processing of its manufacturing concentrate was a "manufacture for purpose of 19 U.S.C. 1562 and is not a permissible manipulation." C.S.D. 82–24, 82 Cust.Bull. 713 (1982). Tropicana protested the 1987 liquidations under item 165.35, which protests were denied, and this action followed.

The court is called upon to determine *de novo* whether Tropicana's bonded warehouse operations, described *infra,* complied with the statute; hence the factual determinations and legal conclusions in C.S.D. 82–24 are not controlling in this case.

This action was tried before the former Chief Judge, Edward D. Re, in August 1990 in Tampa, Florida and reassigned to the writer on February 7, 1992. As stated above, the court's factual and legal deter-

minations are *de novo* based on the record before the court. 28 U.S.C. § 2640(a)(1).

For the reasons stated hereinafter, the action is dismissed.

## FINDINGS OF FACT

Pursuant to CIT Rule 52, this court finds the following facts:

1. The manufacturing concentrate at issue was produced in Brazil by removing water from natural strength fresh juice extracted from oranges having a Brix value (measure of the concentration of soluble solids) of 11.8°, concentrating the juice to a Brix value of 65°, and then freezing the concentrate.

2. The frozen manufacturing concentrate was shipped to Tropicana in 55 gallon drums. When Tropicana's 65° Brix value manufacturing concentrate arrived at the port of entry, Tampa, Florida, its condition was concededly "concentrated" (item 165.-35).

3. The imports comprised identifiable lots of manufacturing concentrate with varying chemical characteristics affecting taste, such as Brix to acid ratios (a measure of the sweetness of the juice). The barrels in which the imports were shipped were color coded so that lots of the desired Brix to acid ratios could be selected for blending. Such blending of different lots of manufacturing concentrate having identifiable Brix to acid ratios changed the fundamental character of the imported unblended concentrate.

4. Unblended 65° Brix value manufacturing concentrate is traded in the commodities futures market.

5. Unblended manufacturing concentrate is the basic orange juice raw material, which by blending of lots having different Brix to acid ratios and dilution (with treated water or single strength juice) to reduce the Brix value, several orange juice products are produced for the retail market: 41.8° Brix value frozen concentrated orange juice (from which a retail consumer makes a single strength orange juice by adding three cans of water to the retail package), and 11.8° Brix value orange juice

from concentrate (a single strength juice consumed directly from the retail package without further dilution with water). Manufacturing concentrate is also sold for use as soda beverage bases.

6. Tropicana used the imported manufacturing concentrate to produce an 11.8° Brix value orange juice from concentrate for sale at retail in an essentially two phase production process, utilizing a bonded warehouse for the initial phase and unbonded facilities to complete the product for retail sale. The initial phase—processing in the bonded warehouse—is the focus of this case.

7. In the initial, or bonded warehouse, phase (described *infra*), Tropicana produced essentially an intermediate product, a 17.3° Brix value partially reconstituted precursor of the retail 11.8° Brix value orange juice from concentrate product. Thereafter, in Tropicana's unbonded facilities further dilution of the precursor (reduction of the Brix value), addition of ingredients of minor value affecting taste, Pasteurization and chilling completed the 11.8° Brix value orange juice from concentrate product sold at retail.

8. In producing the 17.3° Brix value precursor, Tropicana performed two distinct steps in its bonded warehouse—blending and dilution—which, if not independently, surely in combination, constituted "manufacturing" for purposes of § 1562:

(a) *Blending:* After thawing the frozen imported concentrate to make it processable, Tropicana selected identifiable lots having varying Brix to acid ratios and other chemical composition characteristics for quality controlled blending to create the desired characteristics (flavor, density and sweetness, as measured by an index) of the end or finished product—orange juice from concentrate. When imported, these lots were distinguishable by color coded barrel tops. Typically two to ten lots were blended. Tropicana's assertion that this quality controlled blending to specification was simple, unsophisticated "mixing" is facetious.

(b) *Dilution:* In the second major phase of the bonded warehouse operations, domestically purchased water that was specially treated and filtered was added to the blended 65° Brix value manufacturing concentrate diluting its concentration to a Brix value of 17.3°, thus producing an intermediate stage partially reconstituted orange juice from concentrate precursor for further processing in Tropicana's unbonded facilities.

9. At the time of the entries in issue (1981), orange juice was classified by Customs under either of two items of the TSUS, dependent upon the Brix value of the imported product: Orange juice having a Brix value 17.32° or less was classifiable as "not concentrated," dutiable under item 165.30; orange juice having a Brix value of more than 17.32° was classified as "concentrated," dutiable under item 165.35.

10. Tropicana's 17.3° Brix value precursor product withdrawn from its bonded warehouse was made to precise specifications and subjected to stringent quality controlled highly automated blending and dilution processes designed to accomplish *two objectives:* (1) duty reduction by conformance with the 17.32° Brix value threshold concentration for classification of the juice as "not concentrated" (item 165.30) when withdrawn from the bonded warehouse; and (2) compatibility of the intermediate 17.3° Brix product in the standard of quality and specifications for subsequent advancement to the 11.8° Brix retail orange juice from concentrate product.

11. Tropicana's bonded warehouse processing effected a fundamental change in the character and use of the imported manufacturing concentrate.

12. The 17.3° Brix value partially reconstituted product of the bonded warehouse was not a standard orange juice product or marketable by Tropicana, but required certain finishing operations. In Tropicana's unbonded facilities, the 17.3° precursor was further diluted with treated water to 11.8° Brix, ingredients of minor value (orange oils, and occasionally pulp and essences for flavoring) were added, the orange juice from concentrate was then Pasteurized, chilled and packaged for sale at retail.

## CONCLUSIONS OF LAW AND DISCUSSION

1. Under the tariff provision captioned "Manipulation in warehouse," 19 U.S.C. § 1562, imported "merchandise may [with Customs' permission and supervision] be cleaned, sorted, repacked, or otherwise changed in condition, *but not manufactured*, in bonded warehouses" (emphasis added). A corresponding provision appeared in § 562 of the Tariff Act of 1922.

2. Except for scouring or carbonizing of wool, which § 1562 expressly excludes from the term "manufactured," the latter term was left undefined by Congress. The provisions of § 1562 have been administered by Customs for some 70 years and the agency has been regularly required to determine on a case by case basis whether a myriad of manipulations performed in bonded warehouses constitute "manufacturing." As used in § 1562 and the corresponding predecessor provision of the 1922 Act, the term "manufactured" has not previously been construed by the courts, and hence this case involves an issue of first impression.

3. Tropicana posits and defendant disputes that the "substantial transformation" test long applied by the courts to country of origin, drawback, Generalized System of Preferences and other tariff provisions should now be applied to construing the term "manufactured" in § 1562. Citing *National Juice Products Association v. United States*, 10 CIT 48, 59, n. 14, 628 F.Supp. 978 (1986), Tropicana argues that its bonded warehouse operations did not result in a "substantial transformation" of the imported merchandise and therefore it did not "manufacture" in its warehouse. Defendant and counsel for *Amicus Curiae* Florida Citrus Mutual, on the other hand, maintain that the "substantial transformation" test applied in *National Juice* for purposes of country-of-origin marking is inapplicable to the term "manufactured" as used in § 1562; and, even if applicable, there was a substantial transformation of the imports in the bonded warehouse. The court agrees, on both counts, with defendant's contentions.

4. "Substantial transformation is a concept of major importance in administering the customs and trade laws. * * *: There must be transformation; a new and different article must emerge, 'having a distinctive name, character, or use'. The criteria of name, character and use continue to determine when substantial transformation has occurred * * *." *Ferrostaal Metals Corp. v. United States*, 11 CIT 470, 664 F.Supp. 535 (1987). *See also Torrington Co. v. United States*, 3 CAFC (T) 158, 764 F.2d 1563 (1985); *Belcrest Linens v. United States*, 2 CAFC (T) 105, 741 F.2d 1368 (1984) and cases cited; *Azteca Milling Co. v. United States*, 12 CIT 1153, 703 F.Supp. 949 (1988), *aff'd*, 8 CAFC —— (T), 890 F.2d 1150 (1989).

5. The substantial transformation test itself may lead to differing results "where differences in statutory language and purpose are pertinent." *National Juice*, 10 CIT at 59, n. 14, 628 F.Supp. 978. There, Judge Restani held that a ruling of the Customs Service that country-of-origin marking requirements apply to frozen concentrated orange juice and reconstituted orange juice that contain imported manufacturing concentrate is not arbitrary or capricious or otherwise not in accordance with the law. In sustaining the challenged Customs ruling before the court in *National Juice*, the court observed that for country-of-origin marking purposes (19 U.S.C. § 1304) Customs had reasonably determined that substantial transformation does not occur in the production of the retail orange juice products from manufacturing concentrate.

"[C]ourts have been reluctant to lay down specific definitions in this area [manufacturing] other than to discuss the particular facts of cases *under the particular tariff provisions involved.*" *Belcrest*, 2 CAFC at 109, 741 F.2d 1368 (emphasis added). Further, in *Rolland Freres, Inc. v. United States*, 23 CCPA 81 (1935), the appellate court held that the dutiable classification of goods may be controlled by a condition which involved manufacturing efforts of so little importance so that the result would not be the production of an

article as is contemplated by the drawback provisions.

The short of the matter: the criterion of whether goods have been "manufactured" serves different purposes under different statutes, particularly § 1562 on the one hand and statutes concerned with country-of-origin marking, Generalized System of Preferences and drawback on the other; substantial transformation criteria cannot be applied indiscriminantly in the identical manner across the entire spectrum of statutes for which it is necessary to determine whether merchandise has been "manufactured."

6. To interpret "manufacturing"—an expressly prohibited manipulation under § 1562—as requiring a high threshold of transformation (*viz.*, a substantial transformation as stringently required in country of origin and drawback cases), would negate the evident legislative intent of the statute to permit only very minor or rudimentary manipulations in bonded warehouses—akin to the exemplars (cleaning, sorting and repacking). Hence, in the context of § 1562, the prohibited manipulation, manufacturing, may be contravened at a relatively low threshold of "transformation."

7. Acceptance of Tropicana's broadly expansive construction of a permissible "change in condition" under § 1562, coupled with its restrictive construction of prohibited "manufacturing" as contravened only at a substantial or high threshold of transformation, would make the statute's exemplar rudimentary manipulations (cleaned, sorted, repacked) meaningless.

■ 8. While the term "manufactured" commonly connotes a "transformation" of an import to a "new and different article" (*Anheuser–Busch Brewing Ass'n v. United States*, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336 (1908)), for purposes of the particular statute here under consideration a low threshold of transformation satisfies the meaning of "manufactured." *Cf. A.N. Deringer, Inc. v. United States*, 40 Cust. Ct. 261, 265, C.D. 1992 (1958). There, horse meat that was merely ground and cooked without addition of any other ingre-dients (in essence, cooked horse meat) and sold as dog or cat food was held to be "transformed" into a new and distinct article of commerce, and hence "manufactured" for tariff classification purposes. *See also Ferrostaal, supra*, wherein the court found that steel sheet (*a material for further manufacture*) acquired new name, character or use by merely hot-dip galvanizing resulting in a "substantial transformation" irrespective of whether the galvanizing altered the "essence" of the steel sheet.

9. For purposes of § 1562, merchandise may be "manufactured" even if transformation results in merely a material for further manufacture. As observed by the appellate court in *United States v. Richter*, 2 U.S.Cust.App. 167 (1911): While "[o]rdinarily a manufactured article takes a different form, or at least subserves a purpose different from the original materials out of which it is made and usually it takes a different name[,] * * * [t]hat does not mean, however, that its usefulness as a material has ended and that as a manufacture it can not serve the purpose of material for some other manufacture."

10. "While to constitute an article a manufacture, it may be necessary to convert the article into an entirely different article, *it is only necessary that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material, to be manufactured.*" *United States v. C.J. Tower & Sons*, 44 CCPA 1, C.A.D. 626 (1956) (emphasis added). *See also Chas. H. Demarest, Inc. v. United States*, 44 CCPA (Customs) 133, C.A.D. 650 (1957); *H. Muehlstein & Co., Inc. v. United States*, 44 CCPA 107, C.A.D. 645 (1957); *Kleinberger & Katz v. United States*, 12 U.S.Cust.App. 571 (1925); *Myers v. United States*, 1 U.S.Cust.App. 506 (1911). For a comprehensive overview of the long line of cases differentiating between materials "manufactured" and a "manufacture" of a material see Sturm, *Customs Law & Administration*, Vol. 2, § 54.5 (1991).

■ 11. Under § 1562, an intermediate material in process or precursor product

resulting from a "transformation" of an imported raw material, although requiring further processing or fabrication to produce a finished article of commerce, may itself be regarded as "manufactured" for purposes of § 1562.

12. The fact that Tropicana's 17.3° Brix partially reconstituted orange juice from concentrate was a nonstandard and unmarketable product and not an "article of commerce," does not preclude "transformation" and thus manufacture of the imported manufacturing concentrate into a new article for purposes of § 1562. In tariff parlance, there is a fundamental differentiation between the terms "manufactured" and "manufactures of." The former describes a processing operation while the latter refers to a completed article of commerce. *B.A. McKenzie & Co. v. United States*, 47 CCPA 42, C.A.D. 726 (1959); *C.J. Tower & Sons*, 44 CCPA at 7; *Chas. H. Demarest, Inc., supra; United States v. Wilkinson Process Rubber Sales Corp.*, 22 CCPA 60 (1934); *Kleinberger & Katz v. United States*, 12 U.S.Cust.App. 571, 576 (1925).

■ 13. Tropicana's duty-reduction motivation for its bonded warehouse processing of the manufacturing concentrate is neither proscribed by § 1562 nor any other provision of the tariff laws. In that connection, the court observes the fundamental right of an importer to so fashion his goods as to obtain the lowest possible rate of duty, absent any fraud, deception or artifice concerning the condition of the goods. *United States v. Citroen*, 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486 (1912); *Michaelian & Kohlberg, Inc. v. United States*, 22 CCPA 551 (1935). Moreover, the Customs Regulations explicitly provide: "Manipulation resulting in a change in condition of the merchandise, which will make it subject to a lower rate of duty or free of duty upon withdrawal for consumption, is not precluded by the provisions of such section 562." 19 C.F.R. § 19.11(d).

14. Although under § 1562 the tariff classification of imported merchandise may be changed by permissible manipulations in a Customs bonded warehouse, an importer may not fashion his goods or change their condition in a bonded warehouse to obtain a lower rate of duty by impermissible manipulations. In this case, Tropicana "fashioned its merchandise" in its bonded warehouse by manufacturing, which is expressly prohibited.

■ 15. Under the rule of *ejusdem generis* (where the statute's particular words of description are followed by general terms), the scope of permissible manipulations falling within the language "otherwise changed in condition," must be construed not only with reference to the immediately following qualifying language, "but not manufactured," but also in the context of the common characteristic of the statute's antecedent specific permissible exemplars, "cleaned, sorted, repacked." *See C.J. Tower & Sons*, 44 CCPA at 5–6. The exemplars are, obviously, all very rudimentary forms of manipulation that do not alter the merchandise *per se*. Tropicana's bonded warehouse operations, as described *supra*, are not literally, analogous to or *ejusdem generis* with "cleaned, sorted, repacked," and therefore are not within the scope of "otherwise changed in condition."

16. The court has considered Tropicana's arguments relating to the imports value added, the costs and relative complexity of the warehouse operations *vis a vis* other operations, and capital investment, but is unable to find that any of those factors alter the conclusions reached herein.

## CONCLUSION

Based on the record before the court, the particular language and evident purpose of § 1562, Tropicana's 17.3° Brix value product was "manufactured" in its Class 8 Customs bonded warehouse for purposes of § 1562, whether or not "substantially transformed" for purposes of country of origin marking, drawback, GSP and other unrelated statutory provisions. The imported merchandise was, therefore, properly assessed with duties at the rate of 35 cents per gallon as concentrated juices under item 165.35, TSUS. The action is dis-

missed and judgment is entered for defendant.