**F.F. ZUNIGA a/c Refractarios Monterrey, S.A., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant– Appellee.**

No. 92–1500.

United States Court of Appeals, Federal Circuit.

June 23, 1993.

Marjorie M. Shostak, Stein, Shostak, Shostak & O'Hara, Los Angeles, CA, argued for the plaintiffs-appellants. With her on the brief was Robert Glenn White.

John J. Mahon, U.S. Dept. of Justice, argued for the defendant-appellee. With him on the brief were Stuart M. Gerson, David M. Cohen and Joseph I. Liebman.

Before NIES, Chief Judge, ARCHER and PLAGER, Circuit Judges.

ARCHER, Circuit Judge.

F.F. Zuniga and Refractarios Monterrey, S.A. (Refractarios) appeal from the judgment of the United States Court of International Trade, No. 79-11-01684 (June 12, 1992), which upheld the classification by the United States Customs Service under Item 531.39, Tariff Schedules of the United States (TSUS) of merchandise described as kiln furniture imported from Mexico. We affirm.

## I.

Zuniga, the importer of record, and Refractarios, the manufacturer and exporter, claim duty-free status under the Generalized System of Preferences for kiln furniture imported into the United States in 1978 and 1979. Kiln furniture is a shaped refractory article that holds ceramicware during firing.

The dry components used to produce kiln furniture include kaolin, clay, sierralite talc, and calcined kaolin or mullite. These dry components are products of the United States that are imported by Refractarios into Mexico. Clay and talc are imported in unground, lump or rock form and the other components are pre-ground.

To produce the kiln furniture, Refractarios processes the dry components in Mexico in a multi-step operation. The clay and talc are finely ground. The dry ingredients are then placed in water in a mixer, called a blunger, to which dispersing agents and defloculants are added. The resulting mixture, called casting slip, is poured into molds. Molded casting slip, called greenware, is removed from the molds after a period of hours and allowed to dry. Finally, the greenware is fired at extremely high temperature in a kiln to create kiln furniture. During firing, a chemical reaction occurs forming cordierite which permits the kiln furniture to maintain high thermal shock resistance and low thermal expansion during subsequent use. Refractarios' formula for making its casting slip is confidential business information.

The Customs Service classified the kiln furniture at issue as shaped refractory articles under Item 531.39, TSUS, and assessed a duty rate of 7.5 percent *ad valorem*. Zuniga, as importer, protested this classification, claiming that the kiln furniture was entitled to duty-free entry under Item A531.39, TSUS, in accordance with the Generalized System of Preference (GSP).

Under the GSP, products imported from a beneficiary developing country (BDC), such as Mexico, may be entered into the United States duty-free

[i]f the sum of (A) the cost or value of the materials produced in the beneficiary developing country ... plus (B) the direct costs of processing operations performed in such beneficiary developing country ... is not less than 35 percent of the appraised value of such article at the time of its entry.

19 U.S.C. § 2463(b)(2); *see also* General Headnote 3(c)(iii), TSUS. Customs Service regulations define the phrase "materials produced in the beneficiary developing country" as used in section 2463(b)(2)(A) as materials which are consumed in making the imported product, and which are either

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

**1206**

19 C.F.R. § 10.177(a) (1992);[1] *see Azteca Mill Co. v. United States,* 890 F.2d 1150, 1151 (Fed.Cir.1989).

The parties agree that the direct cost of the processing in Mexico was less than 35 percent of the appraised value of the kiln furniture at the time of entry. Refractarios contends, however, that it is entitled to take into account the value of the dry materials plus the direct cost of producing the kiln furniture because the dry materials undergo an intermediate transformation into a new and different article of commerce and, therefore, qualify as "materials produced" in Mexico. The United States agreed Refractarios would satisfy the 35 percent requirement if the cost or value of the dry components imported from the United States into Mexico can be included as materials produced in Mexico.

The Court of International Trade held that the Customs Service properly denied duty free status to the imported kiln furniture and sustained the Customs Service's classification under Item 531.39, TSUS. This appeal followed.

## II.

■ A. Determining whether the dry starting materials imported by Refractarios were substantially transformed in Mexico into a new and different article of commerce requires findings of fact by the trial court. *Azteca Mill Co. v. United States,* 890 F.2d 1150, 1151 (Fed.Cir.1989). "These findings may not be set aside unless clearly erroneous." *Id.* (quoting *Superior Wire v. United States,* 867 F.2d 1409, 1414 (Fed.Cir.1989)). If the findings by the trial court are "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ B. Before United States starting materials can be regarded as "materials produced" in Mexico, "[t]here must first be a substantial transformation of the [United States] material into a new and different article of commerce which becomes 'materials produced,' and these materials produced in [Mexico] must then be substantially transformed into a new and different article of commerce." *Azteca,* 890 F.2d at 1151 (quoting *Torrington Co. v. United States,* 596 F.Supp. 1083, 1086 (Ct. Int'l Trade 1984), *aff'd,* 764 F.2d 1563 (Fed.Cir.1985)). A substantial transformation occurs "when an article emerges from a manufacturing process with a name, character, or use which differs from [that] of the original material subjected to the process." *Torrington Co. v. United States,* 764 F.2d 1563, 1568 (Fed.Cir.1985) (citing *Anheuser–Busch Brewing Ass'n v. United States,* 207 U.S. 556, 562, 28 S.Ct. 204, 206, 52 L.Ed. 336 (1908) and *Texas Instruments v. United States,* 681 F.2d 778, 782 (CCPA 1982)). Thus Refractarios must show first that the dry components processed into kiln furniture were, at an intermediate stage in the process, "substantially transformed . . . into a new and different article of commerce." 19 C.F.R. § 10.177(a)(2); *see Azteca,* 890 F.2d at 1151. The determinative issue in this case is whether the casting slip is such a new and different article of commerce.[2]

■ In a process where the manufacturer does not sell an intermediate product, the substantial transformation of the original materials may be found where there is a definite and distinct point at which the identifying characteristics of the starting materials is lost and an identifiable new and different product can be ascertained. *See Azteca,* 890 F.2d at 1151. A transitional stage of a material in process, advancing toward the finished product, however, may not be sufficient. *See Azteca Milling Co. v. United States,* 12 Ct.

---

1. 19 C.F.R. § 10.177(a) (1992) is identical in relevant part to the regulations in effect during the dates of these importations.

2. In its briefs Refractarios indicates that in the trial court it also argued that the dry components were substantially transformed into either pulverized dry components, castables, or greenware.

These arguments have not been developed in any significant way in this appeal; see, for example, Refractarios' reply brief, "They are the same claims made here." Even if their argument has not been abandoned, we perceive no error in this regard and in the trial court's judgment.

Int'l Trade 1153, 1160, 703 F.Supp. 949, 954 (1988), aff'd, 890 F.2d 1150 (Fed.Cir.1989).

■ In this case, the trial court found that making the casting slip required only a simple addition of water and dispersing agents to the dry ingredients and that the slip did not lose the identifying characteristics of the dry components. It concluded that the "casting slip remained clearly recognizable as a simple blend of its dry ingredients, and was not substantially transformed." Although Refractarios contests these findings, it does not point to any evidence to the contrary. Instead, Refractarios merely argues that the process is more than a mere dilution and that performing it requires a considerable degree of experience. Because Refractarios points to no evidence that distinguishes the character of the casting slip from the dry components, we are not persuaded that the trial court clearly erred in finding no *substantial transformation*.

■ C. In addition to being substantially transformed, the intermediate product must also be an "article of commerce." *See* 19 C.F.R. § 10.177(a)(2); *Azteca*, 890 F.2d at 1151. In *Torrington*, this court said:

By emphasizing that the article must be "of commerce," the Customs regulation imposes the requirement that the "new and different" product be commercially recognizable as a different article, *i.e.*, that the "new and different" article be readily susceptible of trade, and be an item that persons might well wish to buy and acquire for their own purposes of consumption or production.

. . . .

... [A]n "article of commerce"—for the purposes of the pertinent Customs regulation—is one that is ready to be put into a stream of commerce, but need not have actually been bought-and-sold, or actually traded, in the past.

*Torrington*, 764 F.2d at 1570; *see also Azteca*, 890 F.2d at 1151.

■ The trial court held that Refractarios' casting slip is not an article of commerce and that it is not "readily susceptible of trade." Refractarios contends however that it demonstrated that the casting slip is an article of commerce based on (1) testimony of a competitor's employee, that the competitor would buy the slip if it were economically feasible; (2) evidence that other casting slip is sold in the market and (3) testimony by Mr. Turk, former president and chief executive officer of Refractarios, that he had once been asked to sell casting slip (though no actual sales were ever made). These same contentions were made at trial and were specifically considered and rejected by the trial court. Employees of Refractarios' competitor testified without contradiction that the confidential formula of Refractarios' kiln furniture could be ascertained if its casting slip was sold. Moreover, in their view the slip could not be sold at prices that would be economical for a competitor to purchase. Because of the potential disclosure of confidential information and the uncompetitive price at which the slip would have to be sold, the trial court concluded that Refractarios' casting slip is not "susceptible of trade." As to the sale of other slip, unrebutted testimony demonstrated that it is not comparable to Refractarios' casting slip in kind or quality. It is comprised of different ingredients and cannot be used in the making of kiln furniture. Rather, it is a lower quality product that is sold to hobbyists. By the same token, the evidence indicates that kiln furniture casting slip is not suitable for hobbyists because it contains excessive ingredients and the products made from it have an unattractive rough texture.

Finally, the trial court discounted the single potential sale as insufficient to demonstrate the commercial availability of kiln furniture casting slip. The court noted that Refractarios was in the business of selling kiln furniture, not casting slip and had never actually sold any of its slip.

We are convinced that when viewed in the light of the contrary evidence at trial, the evidence relied on by Refractarios does not show that the trial court clearly erred in its factual findings. As stated by the trial court, Refractarios' kiln furniture casting slip "was only a 'transitional stage' of a 'material [ ] in process, advancing toward the finished product' of imported kiln furniture. See *Azteca*, 12 CIT at 1160 [703 F.Supp. at 954, aff'd, 890

F.2d 1150 (Fed.Cir.1989) ].'' We agree that Refractarios did not establish that the United States components had undergone a substantial transformation into a new and different intermediate article of commerce.

### CONCLUSION

Accordingly, we affirm the judgment of the Court of International Trade that Refractarios is not entitled to duty free importation of the kiln furniture at issue.

*AFFIRMED.*