**SDI TECHNOLOGIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 97–111.**
**Court No. 94–01–00014.**

United States Court of
International Trade.

Aug. 7, 1997.

Sharretts, Paley, Carter & Blauvelt, P.C. (Peter Jay Baskin and Kenneth R. Paley), Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Susan Burnett Mansfield); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Mark G. Nackman), of counsel, Washington, DC, for defendant.

## OPINION

GOLDBERG, Judge.

Plaintiff, SDI Technologies, Inc. ("SDI"), claims that defendant, the United States Customs Service ("Customs"), improperly declined to classify articles imported from Mexico to the United States as exempt from duty under the Generalized System of Preferences ("GSP"), 19 U.S.C. § 2463(b) (Supp. II 1990). At issue is whether the goods imported from Mexico are "products of" Mexico for GSP purposes. To make this determination, the Court must decide if goods imported into Mexico from China were substantially transformed in Mexico before being exported to the United States. This Court finds that the goods were not substantially transformed in Mexico, and therefore holds that Customs correctly denied GSP status to the articles when they were imported to the United States.

## BACKGROUND

SDI, formerly known as "Soundesign," is a consumer electronic manufacturer and distributor, whose major production in the past has included audio rack systems, CD players, "boom boxes," clock radios, telephones, and VCRs. Oral Test. of Mr. Edward Kurowski (expert witness for SDI) (Nov. 19, 1996) ("Kurowski Test."). The subject goods, model numbers 46C46M1 and 63R63M, are imported into the United States from Mexico, and sold by SDI as "rack stereo systems." Legal Mem. Supp. Pl.'s Claims at 1. The subject goods consist of a center console, which houses the electronic equipment, and two speakers. *Id.* The major difference between models is that the speakers for model 46C46M1 are attached to the console by hinges, while the speakers for model 63R63M are free standing.

SDI's manufacturing operation in Juarez, Mexico consisted of laminating imported raw particle board, cutting and grooving this

board, molding plastic components, cutting and painting imported foam, and finally joining these parts "with other components that did not require additional processing prior to the assembly of the rack stereo systems." Legal Mem. Supp. Pl.'s Claims at 3; *accord* Kurowski Test. Components that did not require "additional processing" included the audio electronics for each system, *"i.e.,* unhoused printed circuit board assemblies with face-plate incorporating components for radio receivers [and] duel cassette decks," and the raw speaker cones. Legal Mem. Supp. Pl.'s Claims at 3. Both the former elements, which SDI terms a "chassis," and the raw speaker cones were imported from China. Kurowski Test. The audio electronics were complete and fully functional when they were imported into Mexico. Oral Test. of Mr. Edward John Foster (expert witness for Customs) (Nov. 19, 1996). At the end of the process, the fully assembled subject goods were packaged in boxes marked "Stereo Music Center," Def.'s Ex. 21, and imported into the United States.

The subject goods were imported to the United States between 1990 and 1992. Customs withheld liquidation of the entries while awaiting a ruling on whether the goods were eligible for duty-free entry under the GSP. Customs Ruling HQ 556699 denied duty-free status to the goods pursuant to the GSP, 19 U.S.C. § 2463(b), and Customs accordingly assessed a duty of 3.7% *ad valorem.*[1] Legal Mem. Supp. Pl.'s Claims at 6–7. SDI filed a timely protest which Customs denied. SDI then initiated this case, claiming that Customs improperly denied duty-free status to the subject goods. This Court finds that Customs acted correctly. The Court exercises jurisdiction under 28 U.S.C. § 1581(a) (1994).

1. 19 U.S.C. § 2463(b) provides in part:
   (1) The duty-free treatment provided under section 2461 of this title shall apply to any eligible article which is the *growth, product, or manufacture* of a beneficiary developing country if—
   (A) that article is imported directly from a beneficiary developing country into the customs territory of the United States; and
   (B) the sum of (i) the cost or value of the materials produced in the beneficiary develop-

### STANDARD OF REVIEW

Custom's factual determinations upon which it based its decision to deny duty-free treatment are entitled to a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1994) (describing presumption); *Goodman Mfg., L.P. v. United States,* — Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995). *See also Aurum Jewelers, Inc. v. United States,* — CIT ——, ——, Slip Op. 97–47 at 4, 1997 WL 209174 (Apr. 21, 1997) (applying the statutory presumption of correctness in a GSP case); *Haggar Apparel Co. v. United States,* — CIT ——, ——, 938 F.Supp. 868, 869–70 (1996) (same). SDI thus bears the burden of proving the Custom's determination is incorrect.

### DISCUSSION

Congress originally enacted the GSP program "to extend preferential tariff treatment to the exports of less-developed countries to encourage economic diversification and export development within the developing world." S.Rep. No. 93–1298, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7187. The GSP provides that certain "eligible articles" may be imported into the United States duty-free if they meet three requirements. First, the article must be the "growth, product or manufacture" of a beneficiary developing country ("BDC"). 19 U.S.C. § 2463(b)(1); *see also* 19 U.S.C. § 2463(b)(2). Second, the article must be imported directly from a BDC into the customs territory of the United States. *Id.* § 2463(b)(1)(A). Third, the sum of the cost or value of the material produced in the BDC plus the direct costs of processing operations performed in the BDC must not be less than thirty-five percent of the appraised value of such article at the

ing country or any 2 or more countries which are members of the same association of countries which is treated as one country under section 2462(a)(3) of this title, plus (ii) the direct costs of processing operations performed in such beneficiary developing country or such member countries is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.
19 U.S.C. § 2463(b)(emphasis added).

time of its entry into the customs territory of the United States. *Id.* § 2463(b)(1)(B).

Both parties agree that for the purposes of the GSP, Mexico was a BDC for the years 1990, 1991, and 1992, and that for these years, the stereo rack systems were eligible articles for duty-free treatment. Compl. at 2–3, nos. 11–12; Answer at 1–2, nos. 11–12. Likewise, both parties have stipulated that the subject goods were imported directly from a BDC into the customs territory of the United States, and that the thirty-five percent requirement is met. Def.'s Pretrial Mem. at 6. Hence, the only issue in this case is whether the subject goods are the growth, product, or manufacture of Mexico.

■ To be considered the growth, product, or manufacture of a BDC for GSP purposes, goods imported into the BDC from a third, non-BDC country must undergo a "substantial transformation" in the BDC before they are imported to the United States.[2] *Zuniga,* — Fed. Cir. (T) at ——, 996 F.2d at 1206 (citing *Azteca Milling Co. v. United States,* 8 Fed. Cir. (T) 13, 14, 890 F.2d 1150, 1151 (1989)). "[S]ubstantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." *Torrington v. United States,* 3 Fed. Cir. (T) 158, 163, 764 F.2d 1563, 1568 (1985) (citation omitted). However, because "[t]he article need not ex-

perience a change in name, character, *and* use to be substantially transformed," all three of these elements need not be met before a court may find substantial transformation. *Koru North America v. United States,* 12 CIT 1120, 1126, 701 F.Supp. 229, 234 (1988) (emphasis added) (citation omitted).

■ SDI claims that the goods satisfy the GSP's requirement that they be the "growth, product, or manufacture" of a BDC because the chassis, of Chinese origin, were substantially transformed into a different product in Mexico before they were exported to the United States because the chassis changed in name, character, and use. Legal Mem. Supp. Pl.'s Claims at 8, 11. This Court is unpersuaded by SDI's arguments, and finds that because neither the character nor the use of the chassis changed when it became a stereo rack system, the chassis did not undergo substantial transformation.[3] The Court addresses each element in turn.

## A. THE SUBJECT GOODS HAVE NOT UNDERGONE A CHANGE IN CHARACTER

■ SDI argues that the subject goods have undergone a change in character on two levels: first, it asserts that, like the goods in *Midwood Industries, Inc. v. United States,* 64 Cust. Ct. 499, 313 F.Supp. 951 (1970), the

---

**2.** A substantial transformation test is used in a number of different trade-related situations, including compliance with the country of origin marking statute, allowance of drawback, and qualification for GSP status. *National Juice Prod. Ass'n. v. United States,* 10 CIT 48, 58 n. 14, 628 F.Supp. 978, 988 n. 14 (1986). While the tests applied to establish conformance with these three statutes are similar, the outcomes may differ because the statutes differ both in language and in purpose. *Id.* Each case must be evaluated on its own particular set of facts to determine whether an article has been substantially transformed irrespective of the statute. *Uniroyal, Inc. v. United States,* 3 CIT 220, 224, 542 F.Supp. 1026, 1029 (1982) (citations ommitted), *aff'd,* 1 Fed. Cir. (T) 21, 702 F.2d 1022 (1983); *see F.F. Zuniga v. United States,* — Fed. Cir. ——, ——, 996 F.2d 1203, 1206 (1993) (determining whether articles were substantially transformed "requires findings of fact by the trial court").

**3.** The Court does not reach whether there has been a change in name because while a change in name can serve as evidence of substantial

transformation, alone it is usually not dispositive. *Superior Wire v. United States,* 11 CIT 608, 614, 669 F.Supp. 472, 478 (1987), *aff'd,* 7 Fed. Cir. (T) 43, 867 F.2d 1409 (1989). *See also National Juice Prod.,* 10 CIT at 59, 628 F.Supp. at 989 (citation omitted)(concluding that a change in the name of a product is the "weakest evidence of substantial transformation"); *Uniroyal,* 3 CIT 220, 542 F.Supp. 1026 (finding that a product did not undergo substantial transformation even though its name changed from "upper" to "shoe"); *United States v. Int'l Paint Co.,* 35 C.C.P.A. 87, 93–94 (1948) ("Under some circumstances a change in name would be wholly unimportant, and equally so is a lack of change in name under circumstances such as [in this drawback case]."). Thus, although the parties disagree over the proper use of the term "chassis" as it pertains to the electronic equipment, the Court does not reach whether the subject goods' name has changed.

chassis here have changed from producers' goods to consumers' goods; and second, SDI claims that the chassis have changed from articles that are "fragile," "unsafe," and low in value, to "completed products" with "a finished appearance" which are both durable and "entirely safe," with a value roughly double the value of the chassis. Legal Mem. Supp. Pl.'s Claims at 15–16. The Court finds these arguments to be without merit, and discusses each in turn.

SDI first asserts that when an article has been refined from a producers' good to a consumers' good, the article *a fortori* has undergone a change in character. SDI then attempts to characterize the chassis as imported into Mexico as producers' goods, and the stereo rack systems as exported from Mexico into the United States as consumers' goods. Yet the court has never held that the producer/consumer shift alone is dispositive. *See Uniroyal,* 3 CIT at 223–24, 542 F.Supp. at 1029–30 (holding that imported shoe uppers were not substantially transformed when the importer attached soles even though the goods changed from a producers' good to a consumers' good). Moreover, this Court rejects SDI's suggestion that the producer/consumer shift alone qualifies an article for duty-free status. Quite simply, it proves too much: by SDI's argument, virtually any unfinished product that is finished by a producer before it is sold to a consumer would have undergone substantial transformation.

■ Nevertheless, the Court still recognizes that the producer/consumer shift does have some evidentiary value. Even so, SDI's reliance on *Midwood Industries,* 64 Cust. Ct. 499, 64 Cust.Ct. 499, 313 F.Supp. 951, is misplaced. Unlike the present case, the goods in *Midwood Industries* were not in their finished form, and they were neither "used by the consumer . . . [nor] capable of use by the consumer" in the state in which they were imported into the BDC. 64 Cust. Ct. at 507, 313 F.Supp. at 957. Here, however, the chassis imported into Mexico from China were the fully-functional electronic components of the stereo rack systems, capable of use by the consumer in the state in which they arrived in Mexico. Indeed, the chassis underwent no changes before they were housed, paired with speakers, and renamed "stereo rack systems."

SDI next claims that the subject goods have undergone a change in character because the chassis have been transformed from items that are "fragile," "unsafe," and low in value, to "completed products" with "a finished appearance" which are durable and "entirely safe" with a value roughly double that of the value of the chassis. Legal Mem. Supp. Pl.'s Claims at 15–16. However, SDI does not offer the Court any support for the proposition that these changes are proof of a change in character, and the Court declines to expand our formulation of the name, character, and use test to include these elements.

■ Additionally, the Court finds that, because the essence of the chassis remains the same, its character has not changed. While the Court acknowledges that a change in essence is not always a necessary prerequisite to a change in character, a lack of a change in essence evidences a lack of a change in character.[4] The relation between essence and character is apparent in *Webster's New World Dictionary* which defines "character" as "a distinctive trait, quality, or attribute; characteristic" or "essential quality." *Webster's New World Dictionary* 235 (3d. C. ed.1988). This Court finds no evidence of a change in essence of the goods during the process in which the chassis became a stereo rack system. When it was imported into Mexico, the chassis contained all of the electronics in the rack system, and

---

4. SDI asserts that Customs may not use an "essence test" to assess substantial transformation because of the holding in *Ferrostaal Metals Corp. v. United States,* 11 CIT 470, 664 F.Supp. 535, (1987), which SDI claims "summarily dismissed" such an argument. Legal Mem. Supp. Pl.'s Claims at 22. SDI's argument, however, is flawed on two levels: first, it does not acknowl- edge that *Ferrostaal* affirms *National Juice Products'* use of an essence test to determine if there had been a change in character; and second, it does not acknowledge that *Ferrostaal* concedes that *Uniroyal* used the "essence" of the good to establish substantial transformation resulting from a change in name, character, or use. *Ferrostaal,* 11 CIT at 473–74, 664 F.Supp. at 538.

were completely functional.[5] The stereo rack systems, as exported from Mexico into the United States, were packaged with descriptive brochures that identified the stereo rack systems predominately by these same electronic components. The stores in the United States that retailed the subject goods did so in their electronic departments. Consumers bought the goods principally for use as stereo receivers and tape decks. The essence of the goods, stereo receivers and tape players, did not change when the chassis were housed in the wood-laminate cabinets.

## B. THE SUBJECT GOODS HAVE NOT UNDERGONE A CHANGE IN USE

■ SDI also argues that the chassis have undergone a substantial transformation because their use has changed in three distinct manners. First, SDI asserts that before it completed the assembly process, the chassis functioned only as an audio recording and reproduction device, yet after the addition of two speakers, the chassis were transformed, gaining the ability to produce sound, and thus became capable of "audio entertainment." Legal Mem. Supp. Pl.'s Claims at 16. The Court finds this argument unpersuasive: under this analysis *any* stereo system without speakers would be considered only an audio recording and reproduction device. Indeed, if SDI's analysis were carried to its logical conclusion, a stereo system could be substantially transformed by simply adding or removing speakers, or even headphones. However, such ease of transformation is clearly ruled out by 19 U.S.C. § 2463(b)(2) which states that "no article or material of a beneficiary developing country shall be eligible for GSP treatment by virtue of having merely undergone [ ][a] simple combining or packaging operation[ ]." *See also Torrington*, 3 Fed. Cir. (T) at 167, 764 F.2d at 1571. (The production process must be a "significant manufacturing process, and not a mere 'pass-through' operation" to be considered substantial transformation.).

Second, SDI contends that it has transformed the chassis into furniture. However,

SDI's commitment to this argument is belied both by the packaging insert it includes with the system, and by the manual provided to the repair personnel. The former congratulates the owners on their purchase of electronics, and the latter lays out how to fix the electronics—neither mentions the wood-laminate housing. *See* Def.'s Exs. E–K.

Third and finally, SDI claims that there has been a change in use because when the chassis were imported into Mexico, they were capable of being used for a number of products, but that after they "were subjected to the Plaintiff's manufacturing process, they were dedicated to only one use, *i.e.*, as integral parts of the center console of the subject rack stereo systems." Legal Mem. Supp. Pl.'s Claims at 17, (citing *Ferrostaal*, 11 CIT at 477, 664 F.Supp. at 541). However, SDI's reliance on *Ferrostaal* is misplaced. In *Ferrostaal* the court found a change in use because the pre-processed product generally "is not put to end uses without some form of [processing]." *Ferrostaal*, 11 CIT at 477, 664 F.Supp. at 541. In fact, the goods in *Ferrostaal* could not be used in the same manner after processing. *Id.* 11 CIT at 477, 664 F.Supp. at 540–41. However, in the present case, the end use of the chassis remains the same. Before its incorporation into the stereo rack system, the chassis was a recording and receiving device with the ability to produce sound once speakers were attached. After it was incorporated into the stereo rack system, its use was exactly the same.

## C. THE COURT'S FINDING IS CONSISTENT WITH THE STATUTE'S PURPOSE

■ Finally, the Court notes that its holding is fully consistent with the statutory purpose of the GSP. As noted previously, the GSP program was designed to encourage BDCs to produce goods for export, thereby fostering economic diversification and industrialization. S.Rep. No. 93–1298, at 5, 1974 U.S.C.C.A.N. at 7187; *Torrington*, 3 Fed. Cir. (T) at 167, 764 F.2d at 1563 (The "funda-

---

**5.** The only exception is the electronics in the speakers, which were also of Chinese origin.

Kurowski Test.

**1242**

mental purpose" of the GSP is "fostering industrialization in BDCs."). Hence, it is against this backdrop that the Court assesses whether an article has been substantially transformed. *Id.* 3 Fed. Cir. (T) at 167, 764 F.2d at 1563.

Previous courts have evaluated several factors to determine whether the production operation at issue promotes the purposes of the GSP. One such factor is the number of employees that require technical training to perform their jobs, and whether this technical training will "lay[ ] the groundwork for the acquisition of even higher skills and more self-sufficiency." *See, e.g., Texas Instruments Inc. v. United States,* 69 C.C.P.A. 151, 160, 681 F.2d 778, 785 (1982). The GSP program, therefore, is not meant to encourage an increase in the number of simple labor intensive jobs within a BDC.

▇▇ Applying these factors here, the Court concludes that the production operation fails to satisfy the purpose of the GSP. In the instant case the complex manufacturing took place in China. Moreover, the majority of the operations in SDI's plant in Juarez, Mexico only required a skill level of a first to sixth grade education. Kurowski Test. Accordingly, this Court finds that the purpose of the GSP is not met through the jobs that SDI created.

### CONCLUSION

This Court finds that Customs correctly determined that the subject goods have not undergone substantial transformation, and therefore are not "products of" Mexico entitled to be duty-free under the GSP. Judgment will be entered accordingly.