Slip Op. 00-139

# United States Court of International Trade

<table>
<tr><td>

UNIDEN AMERICA CORPORATION and
UNIDEN FINANCIAL, INC.,

                Plaintiffs,

        v.

UNITED STATES,

                Defendant.

</td><td>

Before: Pogue, Judge

Court No. 98-05-01311

</td></tr>
</table>

[Plaintiffs' motion for summary judgment is granted. Defendant's motion for summary judgment is denied.]

Decided: October 30, 2000

Akin, Gump, Strauss, Hauer & Feld, L.L.P. (Warren E. Connelly, D. Michael Kaye, Lars-Erik A. Hjelm); Neville, Peterson & Williams (John M. Peterson, Michael K. Tomenga), Of Counsel, for Plaintiffs.

David W. Ogden, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Barbara S. Williams, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel, for Defendant.

## OPINION

**Pogue, Judge:** This matter is before the court on cross-motions for summary judgment. Plaintiffs, Uniden America Corporation and Uniden Financial, Inc. (collectively "Uniden"), challenge the determination by the United States Customs Service ("Customs") that cordless telephones imported by Uniden do not qualify for duty-free treatment under the Generalized System of Preferences ("GSP"). See

19 U.S.C. §§ 2461-2466 (1994).[1]  The court has jurisdiction over this matter under 28 U.S.C. § 1581(a) (1994).

## Background

The article in question is a cordless handset telephone, Model CT301, manufactured by Uniden Philippines Laguna, Inc. ("UPLI"). The cordless telephone consists of three detachable components: a handset, a base unit, and an A/C adapter.  Each cordless telephone incorporates over 275 separate parts purchased by UPLI both in the Philippines and in third countries. See Pl.'s St. of Facts, at ¶ 3; Def.'s Resp. to Pl.'s St. Facts, at ¶ 3.  The A/C adapters UPLI installs in the telephones are purchased from a Chinese supplier for $1.14 each.  See Pl.'s St. of Facts, at ¶ 7; Def.'s Resp. to Pl.'s St. of Facts, at ¶ 7.

In June and July 1995, Uniden imported 7,922 units of Model CT301, and entered them as GSP eligible and thus duty-free under subheading 8525.20.50 of the Harmonized Tariff Schedule of the United States ("HTSUS").  See  Pl.'s St. of Facts, at ¶¶ 12-15; Def.'s Resp. to Pl.'s St. Facts, at ¶¶ 12-15.  The entered unit value of each Model CT301 varied between $24.65 and $26.18.  See

---

[1]The GSP statute, 19 U.S.C. §§ 2461-2466, authorizes the President to prepare a list of beneficiary developing countries ("BDC"), and to designate products of those countries eligible for duty-free treatment.  See Torrington Co. v. United States, 764 F.2d 1563, 1565 (Fed. Cir. 1985).  The GSP was established by Congress in 1974 with the intention of "extend[ing] preferential tariff treatment to the exports of less-developed countries to encourage economic diversification and export development within the developing world." S. Rep. No. 93-1298 (1974), reprinted in 1974 U.S.C.C.A.N. 7186, 7187.

Pl.'s St. of Facts, at ¶¶ 12, 13; Def.'s Resp. to Pl.'s St. Facts, at ¶¶ 12, 13.  Customs classified the units under HTSUS subheading 8525.20.50,[2] see Pl.'s St. of Facts, at ¶ 16; Def.'s Resp. to Pl.'s St. of Facts, at ¶ 16, but rejected Uniden's request for GSP duty-free treatment of the telephones, see Stipulation and Order, at 1 (Nov. 29, 1999).  Customs objected to the Chinese origin of the detachable A/C adapter.  See HQ 560050 (Oct. 29, 1997).

The statutory provision governing GSP status in this matter provides as follows:

> § 2463(b) Eligible articles qualifying for duty-free treatment
>
>> (1)  The duty-free treatment provided under section 2461 of this title shall apply to any eligible article which is the growth, product, or manufacture of a [BDC] ifB
>> (A)  that article is imported directly from a [BDC] into the customs territory of the United States; and
>> (B)  the sum of (i) the cost or value of the materials produced in the [BDC] . . . , plus (ii) the direct costs of processing operations performed in such [BDC] . . . is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.
>
>> (2)  The Secretary of the Treasury, after consulting with the United States Trade

---

[2]The parties agree that in 1995, the year of the entries, the proper tariff classification for the imported merchandise was subheading 8525.20.50, HTSUS (1995):

Transmission apparatus for radiotelephony, radiotelegraphy, radiobroadcasting or television, whether or not incorporating reception apparatus or sound recording or reproducing apparatus; television cameras: Transmission apparatus incorporating reception apparatus: . . . Other: Cordless handset telephones

Representative, shall prescribe such regulations as may be necessary to carry out this subsection, including, but not limited to, regulations providing that, in order to be eligible for duty-free treatment under this subchapter, an article must be wholly the growth, product, or manufacture of a [BDC], or must be a new or different article of commerce which has been grown, produced, or manufactured in the [BDC]; but no article or material of a [BDC] shall be eligible for such treatment by virtue of having merely undergoneB
(A) simple combining or packaging operations

. . .

19 U.S.C. § 2463(b) (1995).

Thus, in order to qualify for the GSP, an article must satisfy three principal conditions. First, the eligible article must be "the growth, product, or manufacture of a [BDC]." 19 U.S.C. § 2463(b)(1) (hereinafter "product of" test). To meet this "product of" test, the "article must [either] be wholly the growth, product, or manufacture of a [BDC], or must be a new or different article of commerce which has been grown, produced, or manufactured in the [BDC]." 19 U.S.C. § 2463(b)(2). Second, an eligible article must be "imported directly from a [BDC] into the customs territory of the United States." 19 U.S.C. § 2463(b)(1)(A). Third, the sum of the cost or value of the materials produced in the BDC plus the direct costs of the BDC processing operations must not be less than thirty-five percent of the appraised value of such article at the time of entry. See 19 U.S.C. § 2463(b)(1)(B) (hereinafter the "thirty-five percent cost/value" requirement).

Both parties agree that the articles in question were directly

imported from a BDC and that the articles met the "thirty-five percent cost/value" requirement.  See Stipulation and Order, at 2. The parties additionally agree that the article is not wholly the growth, product, or manufacture of a BDC.  See Pl.'s Mem. Supp. Mot. Summ. J., at 8; Def.'s Mem. Supp. Cross-Mot. Summ. J., at 8. Customs also concedes that the plaintiffs' assembly operation in the Philippines is more than a simple "combining or packaging" operation. See Pl.'s Mem. Supp. Mot. Summ. J., at 18; Def.'s Mem. Supp. Cross-Mot. Summ. J., at 23.  Thus, what remains at issue is whether the "product of" requirement has been satisfied.  And more specifically at issue is whether the cordless telephone is a new or different article of commerce which has been grown, produced, or manufactured in the BDC. See Stipulation and Order, at 2.

The legislative history of the GSP provision indicates:

> Section 2008 amends section 503(b) of the Trade Act of 1974 to insert the requirement in the rules of origin for determining duty-free treatment under the GSP program that an eligible article must be the growth, product, or manufacture of a [BDC]. Regulations issued by the Secretary of the Treasury, after consultation with the USTR, must provide that, in order to be eligible for GSP duty-free treatment, an article must be wholly the growth product, or manufacture of a [BDC] or must be a new or different article of commerce grown, produced, or manufactured (i.e., substantially transformed) in the [BDC].

S. Rep. No. 101-252, at 44 (1990); reprinted in 1990 U.S.C.C.A.N. 928, 971.  As this court in SDI Techs. v. United States, 21 CIT 895, 977 F. Supp. 1235 1239 (1997), aff'd 155 F.3d 568 (Fed. Cir. 1998), explained: "[t]o be considered the growth, product, or manufacture of a BDC for GSP purposes, goods imported into the BDC

from a third, non-BDC country must undergo a 'substantial transformation' in the BDC before they are imported to [sic] the United States."  See SDI Techs., 21 CIT  at 897, 977 F. Supp. at 1239 (citing F.F. Zuniga v. United States, 996 F.2d 1203, 1206 (Fed. Cir. 1993)(footnote omitted)); see also Torrington, 764 F.2d at 1568.

Customs and Uniden offer differing interpretations of the proper manner in which to apply the substantial transformation test.  Customs argues that the cordless telephones imported by Uniden were not substantially transformed in the BDC and thus do not qualify for GSP treatment.  See Def.'s Mem. Supp. Cross-Mot. Summ. J., at 5.  According to Customs, each detachable component of an eligible article must be substantially transformed in the BDC before an article qualifies for GSP.  See id., at 13-14.  Since the detachable A/C adapter for each cordless telephone was imported already assembled into the BDC from a non-BDC, Customs concludes that the entire cordless telephone is not eligible for GSP treatment.  See id., at 15.  Uniden counters that both the plain meaning of the GSP statute and its legislative history do not support a component-by-component application of the "product of" substantial transformation test.  See Pl.'s Mem. Supp. Mot. Summ. J., at 13-14.

Uniden filed a timely protest on November 22, 1995, and requested, on January 25, 1996, that the Port of Dallas-Fort Worth seek internal advice from Customs Headquarters, which it did on August 30, 1996.   See id., at 6.  In December of 1997, after

Customs had issued HQ 560050 (Oct. 29, 1997), the Port of Dallas-Fort Worth denied Uniden's protest.  See id., at 7.  Uniden filed a summons on April 28, 1998, and a complaint on June 28, 1998, in this court challenging Customs' denial of its protest.  See id.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT R. 56(c). On a motion for summary judgment, this court must determine whether any genuine issues of material fact remain.  The issue in this case is whether the statutory conditions as set out in 19 U.S.C. § 2463(b) have been satisfied.  No issues of material fact exist, as the actual method of production of Uniden's cordless handset telephones is not in dispute.  All that remains to be decided is an issue of law; that is, the proper method of interpreting the "substantial transformation" test as it pertains to this case.  Summary judgment is therefore appropriate.

## Discussion

### I.   The Substantial Transformation Test

The parties agree that in order to qualify as the growth, product or manufacture of a BDC, a "substantial transformation" of the article must occur in the BDC.  See Sassy, Inc. v. United

States, 24 CIT __, slip op. 00-93, at 7 (Aug. 2, 2000).  For GSP purposes, "a substantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process."  Torrington, 764 F.2d at 1568 (citing Texas Instruments, Inc. v. United States, 681 F.2d 778, 782 (CCPA 1982)).[3] [4]

Here, each cordless telephone has experienced a change in both name and use from its original materials.  Each of the components of the cordless telephone, including the A/C adapter, has a different name from the article which emerges.  The 275 parts, including the A/C adapter, together form a new article with a new name: the cordless telephone.  In addition, the use of the cordless telephone differs from that of any of its components.  The use of the A/C adapter is to supply power.  This differs from the use of a cordless telephone: to communicate via telephone wires.  Thus, the name and use of the original materials have changed during the

_____

[3] "The 'name, character or use' test is entitled to continued adherence in view of its affirmance in recent opinions by our appellate court."  Koru North America v. United States, 12 CIT 1120, 1126, 701 F. Supp. 229, 234 (1988) (citing Ferrostaal Metals Corp. v. United States, 664 F. Supp. 535, 538 (1987)); see also Torrington, 764 F.2d at 1568; Belcrest Linens v. United States, 741 F.2d 1368, 1372 (Fed. Cir. 1984)).

[4] No article or material of a BDC satisfies the "product of" substantial transformation test by virtue of having merely undergone "[a] simple combining or packaging operation."  19 U.S.C. § 2463(b)(2)(A).  The production must be a "significant manufacturing process, and not a mere 'pass-through' operation" to be considered a substantial transformation.  Torrington, 764 F.2d at 1571. As noted above, the parties here agree that the plaintiffs' assembly operation in the Philippines is more than a simple "combining or packaging" operation.

process of manufacturing the cordless telephones in the BDC.

The character of the finished article also differs from that of the original materials.  The term "character" is defined as "'one of the essentials of structure, form, materials, or function that together make up and usually distinguish the individual.'" National Hand Tool Corp. v. United States, 16 CIT 308, 311 (1992)(citing Webster's Third New International Dictionary (1981)). Here, the cordless telephone has a character and identity separate and distinct from any of its parts.  The A/C adapter neither characterizes nor defines the cordless telephone in question. Rather, the adapter itself is part of a larger article which is characterized by its use as a telephone.  Although some of the components, including the A/C adapter, are readily identifiable, the function of the finished article differs from its components, as discussed above.

These conclusions are supported by the results of applying the "essence test," which is used by this court to determine if there has been a change in character.  See  SDI Techs., 21 CIT at 899, 977 F. Supp. at 1240 ("The relation between essence and character is apparent in Webster's New World Dictionary which defines 'character' as 'a distinctive trait, quality, or attribute; characteristic' or 'essential quality.'")(citing Webster's New World Dictionary 235 (3rd C. ed. 1988)).  In applying the "essence" test to this case, the question is whether the A/C adapter imparts the essential character of the cordless telephone.  See Uniroyal, Inc. v. United States, 3 CIT 220, 225, 542 F. Supp. 1026, 1030

(1982), aff'd 702 F.2d 1022 (Fed. Cir. 1983)(holding that imported shoe uppers added to an outer sole in the United States were "the very essence of the finished shoe" and thus were not substantially transformed); see also National Juice Prods. Ass'n v. United States, 10 CIT 48, 61, 628 F. Supp. 978, 991 (1986)(holding that imported orange juice concentrate "imparts the essential character" to the completed orange juice and thus was not substantially transformed)(internal cites omitted).

We answer in the negative. The essence of the telephone is housed in the base and the handset. Consumers do not buy the article because of the specific function of the A/C adapter, but rather because of what the completed handset and base provide: communication over telephone wires. In short, the A/C adapter does not "impart the essential character" of the cordless telephone, and the cordless telephone may therefore be considered as having a character different from the A/C adapter. Accordingly, as a matter of law, because the name, use and character of the original materials have changed during the process of manufacturing, a substantial transformation has occurred. The cordless telephone is a new or different article of commerce which has been grown, produced, or manufactured in the BDC.

In arguing for the opposite conclusion, Customs apparently confuses the appropriate application of the "thirty-five percent cost/value" test with the "product of" test. In 19 U.S.C. §2463(b), the substantial transformation test is employed twice. First, it is used to determine whether an article is a "product of"

the BDC. Then it is used to determine if thirty-five percent of the eligible article is made or processed in the BDC. In order to achieve the aim of these different and separate provisions of the statute, the substantial transformation test must itself be applied differently and separately.[5]

---

[5]Substantial transformation tests are used in a variety of different trade-related contexts. See SDI Techs., 21 CIT at 897 n.2, 977 F. Supp. at 1239 n.2 (citing National Juice Prods., 10 CIT at 58 n.14, 628 F. Supp. at 988 n.14). "While the tests applied to establish conformance with these [various] statutes are similar, the outcomes may differ because the statutes differ both in language and purpose." Id., 977 F. Supp. at 1239 n.2.
    The "thirty-five percent cost/value" test provides that:

> The duty-free treatment provided under section 2461 of this title shall apply to any eligible article which is the growth, product, or manufacture of a [BDC] if . . . (B) the sum of (i) the cost or value of the materials produced in the [BDC] . . . , plus (ii) the direct costs of processing operations performed in such [BDC] . . . is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

19 U.S.C. § 2463(b)(1)(B).
    The aim of this test is to calculate whether a fraction (at least thirty-five percent, or 7/20ths) of an article qualifies as a product of a BDC. In so doing, it is necessary to apply the substantial transformation test to fractions of the article, rather than to the article as a whole. In other words, to identify whether an article meets the "thirty-five percent cost/value" test, a substantial transformation analysis must initially be made on each non-de minimis component of the article (whether detachable or not). This test is used to determine which components may be considered for GSP purposes as originating in the BDC. The determination is made by calculating the proportion of the combined value of the BDC components and BDC processing operation costs to the value of all components, including the non-BDC components. If the resulting number is thirty-five percent or higher, then the "thirty-five percent cost/value" test is satisfied. And if it is, the mere fact that one detachable component does not meet the substantial transformation test does not disqualify the entire article from GSP eligibility. Here, both parties agree that the cordless telephone satisfies the "thirty-five percent cost/value" test, even though the A/C adapter is a detachable component and

Customs' argument is that the "product of" test is governed by

19 C.F.R. § 10.177, which, in relevant part, provides:

> § 10.177 Cost or value of materials produced in the
> [BDC].
>           (a)   "Produced in the [BDC]" defined.  For purposes
>                 of  §§ 10.171 through 10.178, the words
>                 "produced in the [BDC]" refer to the
>                 constituent materials of which the eligible
>                 article is composed which are either:
>                 (1) Wholly the growth, product, or
>                     manufacture of the [BDC]; or
>                 (2) Substantially transformed in the [BDC]
>                     into a new and different article of
>                     commerce.

19 C.F.R. § 10.177(a)(1)-(2) (1995).  Apparently, according to

Customs, § 10.177's requirement that the thirty-five percent

cost/value test be applied to each of a product's "constituent

materials" must somehow also compel us to apply the "product of"

test to each component.  The title of 19 C.F.R. § 10.177, "Cost or

value of materials produced in the [BDC]," however, clearly

demonstrates that the regulation limits itself to explaining the

_____

itself has not been substantially transformed.
     The "product of" test mandates the following for GSP purposes:
the "article must [either] be wholly the growth, product, or
manufacture of a [BDC], or  must be a new or different article of
commerce which has been grown, produced, or manufactured in the
[BDC]." 19 U.S.C. § 2463(b)(2).  If the article is not "wholly the
product . . . of a [BDC]," the substantial transformation test must
be employed.  The "product of" test makes clear that its
application must be to the "eligible article."  The aim of the
"product of" test is not to determine, as with the "thirty-five
percent cost/value" test, whether a _fraction_ or a _part_ of an
eligible article is a product of the BDC, but rather to see if the
_entire_ "eligible article" is a product of the BDC.  Just as in the
"thirty-five percent cost/value" test, the mere fact that one
detachable component is not a BDC product does not automatically
disqualify the entire article from GSP eligibility.  While the
component-by-component analysis is appropriate for the "thirty-five
percent cost/value" test, the "product of" test must be applied to
the article as a whole.

proper application of the "thirty-five percent cost/value" test, not the entirety of 19 U.S.C. § 2463(b).  19 C.F.R. § 10.177 does not regulate the appropriate application of the "product of" test.

The major flaw in Customs' argument is its erroneous assumption that the substantial transformation test must be applied to each detachable component rather than to the article as a whole in order to satisfy the "product of" test.  A plain reading of 19 U.S.C. § 2463(b)(1) and the provision that further explains it, 19 U.S.C. § 2463(b)(2), however, confirms that <u>an article</u>, <u>not</u> each detachable component of an article, must become "a new or different article of commerce which has been grown, produced, or manufactured in the [BDC]."  19 U.S.C. § 2463(b)(3).  This "article [must] emerge[ ] from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process."  <u>Torrington</u>, 764 F.2d at 1568 (citing <u>Texas Instruments</u>, 681 F.2d at 782).  The article in this case, the cordless telephone, does emerge from a manufacturing process with a name, character, and use which differs from those of the original material subjected to the process.

Customs asserts that absurd outcomes will result if the "product of" test is not applied, as it recommends, in a manner which disqualifies any article with a non-BDC detachable component.[6]  <u>See</u> Def.'s Mem. Supp. Cross-Mot. Summ. J., at 13.  In

---

[6]Customs' primary contention is that each detachable component of the cordless telephone must be substantially transformed before GSP duty-free treatment can be extended.  Although detachable non-BDC components do not automatically disqualify an article from GSP

Customs' words, "[a]ny product which is comprised of more than one separate part would qualify for GSP treatment provided a single part was substantially transformed in the BDC." Id. In making its case, Customs uses the example of a coffee pot and lid; it contends that, if Uniden's interpretation prevails, the GSP would apply "to an entire coffee pot, even if only the lid were manufactured in the BDC, while the remainder of the coffee pot were simply imported into the BDC from a non-BDC country." Id. Customs insists that if the court rules against its interpretation, the resulting situation will be one in which "even if only one of the three components in [Uniden's] imported cordless telephones was substantially transformed in the BDC, it would still qualify for duty-free treatment." Id. Customs concludes that the court is left with

duty-free treatment, Customs contends that the specific facts of this case warrant such a disqualification. Uniden's cordless telephone, according to Customs, should be denied GSP treatment because its A/C adapter is not permanently assembled into the telephone. See Def.'s Cross-Mot. Summ. J., at 13. Customs' distinction as to whether a component has been substantially transformed thus rests on whether a "detachable" part is easily detachable from the outside of the article. For instance, Customs ruled that removable rechargeable battery packs, when inserted into an article, were substantially transformed, thus allowing the entire article to qualify for GSP duty-free treatment. See HQ 559634 (Aug. 8, 1996); see also HQ 559336 (Mar. 13, 1996)(holding that snap-in adapter in base of laptop computer does not disqualify the overall article from GSP duty-free status); HQ 560633 (Nov. 13, 1997)(holding that optional foreign components installed inside laptop computer (e.g., fax modem) do not disqualify laptop computer from GSP duty-free treatment). In practice, Customs grants GSP privileges to detachable non-BDC components if they are assembled inside the article. Thus, Customs bases some of its substantial transformation decisions on a series of distinctions such as component versus article, detachable component versus non-detachable component and detachable component attached to outside of article versus detachable component attached to inside of article.

only one remaining rational alternative: to mechanistically disqualify from GSP eligibility any article with a minor non-BDC detachable component.[7]

Customs, however, does not consider the absurdity that would result if its own interpretation of the "product of" test were the rule. Applying Customs' component-by-component analysis would mean that a simple non-BDC nut and screw set meant to be installed by the consumer could conceivably disqualify an article from GSP eligibility. Even in Customs' own electric coffee pot analogy, if the lid were the only non-BDC component, Customs would declare the entire article ineligible for GSP treatment, despite the technological expertise and work required to build the pot's electrical and heating components. In order to be consistent with the statute, the "product of" test must be applied not to each detachable component, but rather to the BDC article as a whole.

Regulations governing the application of the Caribbean Basin Initiative (CBI) further indicate that the manufacturing process used here satisfies the GSP "product of" test. Uniden argues that because Congress intended the GSP to be applied in the same manner

---

[7]Customs does not, however, argue that a de minimis detachable non-BDC component must make an otherwise eligible article ineligible for GSP treatment. The principle of de minimis non curat lex ("the law does not care for trifles") is an established principle in law regarding imported goods. See Alcan Aluminum Corp. v. United States, 165 F.3d 898, 903 (Fed. Cir. 1999). Plaintiff has filed a Notice for Leave to File a Supplementary Memorandum raising the issue of whether the cordless telephone's non-BDC material is de minimis. Given today's disposition concerning the plain meaning of 19 U.S.C. § 2463(b), we do not reach the de minimis issue here.

as the CBI, the CBI legislative history is relevant to its discussion of the GSP. <u>See</u> Pl.'s Mot. Supp. Summ. J., at 8-9. In support of this argument, Uniden cites a Senate Report presented in connection with the 1990 amendment to the GSP statute. The purpose of the 1990 amendment was:

> to ensure that duty-free treatment under the CBI is not applied more restrictively than under the GSP program and that the GSP rules of origin do not become a loophole for duty-free treatment not intended under the CBI program. As a result of the amendment, <u>the origin rules and regulations under the two programs would be identical</u>.

S. Rep. No. 101-252, at 44; <u>reprinted in</u> 1990 U.S.C.C.A.N. at 971 (emphasis added). Congress made clear its intent that the CBI and GSP origin rules should be applied identically; thus, the regulations in place that govern the application of the CBI are directly relevant to determining the correct application of the GSP.

Here, the relevant CBI regulations are found at 19 C.F.R. §§ 10.191-.198 (1995). 19 C.F.R. § 10.195(a)(2) provides:

> (ii)  For purposes of this section, simple combining or packaging operations . . . shall <u>not</u> be taken to include processes such as the following:  (A) The assembly of a large number of discrete components onto a printed circuit board . . . (D) A simple combining or packaging operation . . . coupled with any other type of processing such as testing or fabrication (<u>e.g.</u>, a simple assembly of a small number of components, one of which was fabricated in the [BDC] where the assembly took place).
>      The fact that an article or material has undergone more than a simple combining or packaging operation . . . is <u>not necessarily</u> dispositive of the question of whether that processing constitutes a substantial transformation for purposes of determining the country of origin of the article or material.

19 C.F.R. § 10.195(a)(2)(ii) (emphasis added).

The use of "not necessarily dispositive" indicates that, barring factors to the contrary, "[t]he assembly of a large number of discrete components onto a printed circuit board" may be construed as evidence that the substantial transformation test has been satisfied.  Here, the extensive manufacturing process Uniden employs includes the complex assembly of numerous discrete components onto a printed circuit board, as well as a combining and packaging operation coupled with other forms of fabrication and assembly.

## II.  Treasury Decision 91-7

Customs claims that Treasury Decision 91-7 applies to the case at hand.  See Def.'s Cross-Mot. Summ. J., at 20-22 (citing T.D. 91-7, 25 Cust. B. 7 (1991)).  T.D. 91-7 states in plain language that "[t]his ruling concerns the tariff treatment and country of origin marking of imported sets, mixtures and composite goods . . . ."  25 Cust. B. at 8.  Issue 2 of T.D. 91-7 is accordingly titled "Eligibility of Sets, Mixtures and Composite Goods for Special Tariff Treatment Programs."  25 Cust. B. at 14 (emphasis added).  Customs readily concedes that Uniden's cordless telephones are not "sets, mixtures [or] composite goods," see Def. Mem. Supp. Cross-Mot. Summ. J., at 20, and thus are not classifiable under General Rule of Interpretation ("GRI") 3(b), HTSUS, but rather under GRI 1, HTSUS, as articles.  Nonetheless, Customs contends, without citing any authority, that this court should extend T.D. 91-7's reach to cover GRI 1 articles as well as GRI 3(b) sets.  See id. at 21-22.

The plain language of T.D. 91-7, however, indicates that it is meant to cover only sets, mixtures, and composite goods:  "This document sets forth the position of the U.S. Customs Service regarding certain issues that have arisen concerning the tariff treatment and country of origin marking of <u>sets, mixtures, and composite goods</u>."  25 Cust. B. at 7 (emphasis added).  Accepting Customs' interpretation would violate the plain language of T.D. 91-7, which by its terms is limited in application to GRI 3 articles.  If the Department of the Treasury had meant for T.D. 91-7 to apply to GRI 1 articles, it would not have chosen to make frequent use of the very specific language "sets, mixtures and composite goods" throughout T.D. 91-7.  Consequently, neither T.D. 91-7 nor its principles apply here.

## III. The Purpose of the GSP

The legislative history indicates that Congress' intent with respect to the GSP was "to extend preferential tariff treatment to the exports of less-developed countries to encourage economic diversification and export development within the developing world."  S. Rep. No. 93-1298, <u>reprinted in</u> 1974 U.S.C.C.A.N. at 7187.  Courts have identified a number of factors to determine whether the "fundamental purpose" of the GSPＢ"fostering industrialization in BDC's"Ｂis being served by particular applications of the substantial transformation test.  <u>Torrington</u>, 764 F.2d at 1565.  The court in <u>Texas Instruments</u> looked at the number of employees requiring technical training to perform their

work in determining whether the production operation at issue promotes the purposes of the GSP. See 681 F.2d at 785. The SDI Technologies court examined whether such technical training will "'lay[ ] the groundwork for the acquisition of even higher skills and more self-sufficiency,'" and whether "complex manufacturing took place in [the BDC]." SDI Techs., 21 CIT at 901, 977 F. Supp. at 1242 (quoting Texas Instruments, 681 F.2d at 785). The SDI Technologies court also noted that "[t]he GSP program . . . is not meant to encourage an increase in the number of simple labor intensive jobs within a BDC." Id., 977 F. Supp. at 1242.

The assembly of over 275 separate components does not constitute the kind of simple labor intensive work the GSP would seek to deny. Indeed, the eleven-step manufacturing process, consisting of automatic and manual insertion of parts onto printed circuit boards with electronic and mechanical parts which are then permanently bonded, constitutes "technical training [which] will 'lay[ ] the groundwork for the acquisition of even higher skills and more self-sufficiency.'" Id., 977 F. Supp. at 1242. As mentioned earlier, this process constitutes more than just "simple combining packaging operations." Uniden's cordless telephone is precisely the kind of article Congress intended to qualify for duty-free treatment under the GSP.

## IV.  Deference to Customs' Legal Interpretations

For the reasons explained above, the legal interpretation made by Customs here is inconsistent with the GSP statute.  If the court is presented with two reasonable interpretations of the statuteBi.e., that of the agency and that of the petitionerBthe court may be required to defer to the interpretation of the agency. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-45 (1984); but see  Christensen v. Harris County (120 S. Ct. 1655 (2000)); Genesco, Inc. v. United States, 24 CIT __, __, 102 F. Supp. 2d 478, 484 (2000).  The court will not, however, allow an agency, under the guise of lawful discretion, to alter or ignore the intent of Congress or the guiding purpose of the statute.  See id. at 842-43.  Accordingly, even assuming arguendo that ordinary Customs rulings are generally entitled to deference,[8] Customs is not entitled to any deference here.  See ERO Industries, Inc. v. United States, 24 CIT __, __, slip op. 00-138, at 19-20 (Oct. 19, 2000).

---

[8]Mead Corp. v. United States, 185 F.3d 1304 (Fed. Cir. 1999), cert. granted, 120 S.Ct. 2193 (May 30, 2000), held that no deference should be accorded to legal interpretations contained in ordinary Customs rulings.  See also Carl Zeiss, Inc. v. United States, 195 F.3d 1375 (Fed. Cir. 1999).  The Supreme Court will hear oral argument in Mead on November 8, 2000.

## Conclusion

For the foregoing reasons, we hold that Customs incorrectly denied duty-free treatment to Uniden's imported cordless telephones under the GSP.  Accordingly, Customs' motion for summary judgment is denied.   In turn, Uniden's motion for summary judgment is granted and judgment is entered for Uniden.

_____
                                            Donald C. Pogue
                                                Judge

Dated:     October 30, 2000
           New York, New York